UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVIAN AMADOR LOPEZ, et al.,<br>Plaintiffs,<br>v.<br>COUNTY OF STANISLAUS, et al.,<br>Defendants. | Case No. 2:25-cv-01175-DC-CSK<br><br>ORDER RE: PLAINTIFFS' MOTION TO COMPEL RFPs TO COUNTY DEFENDANTS<br><br>(ECF No. 73) |

Pending before the Court is Plaintiffs Vivian Amador Lopez, Juan Telles, John Mataka, and Miguel Donoso's motion to compel Defendants County of Stanislaus, Stanislaus County Board of Supervisors, Matthew "Buck" Condit, Vito Chiesa, Terry Withrow, Manmeet "Mani" Grewal, Channce Condit, Jody Hayes, and Donna Linder's ("County Defendants") further responses to Plaintiffs' first set of requests for production ("RFP") to County Defendants.[1] (ECF Nos. 73, 78, 88.) A hearing was held on August 25, 2026. Attorneys Ernest Herrera and Or-El Vaknin appeared as counsel for Plaintiffs; attorneys Julia Michel and Beverly Grossman Palmer appeared as counsel for County Defendants. (ECF No. 87.) Defendants Stanislaus County Board of Education, Cinyere Nnodim-Jack, Alice Pollard, Kim Rose, Mary Sanders, and Paulo Carvalho are not

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

involved in this discovery dispute.

For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to compel.

## I. BACKGROUND

### A. Facts[2]

Plaintiffs are Latinos registered to vote in Stanislaus County. FAC ¶¶ 7-11 (ECF No. 67). Plaintiffs allege that Latino residents of Stanislaus County are underrepresented on Stanislaus County's Board of Supervisors and Board of Education, though they constitute 48.1% of the County's total population and 39.83% of the County's citizen voting age population ("CVAP"). *Id.* ¶¶ 19-21. The County Board of Supervisors comprises five districts that are coterminous with the five districts of the Board of Education. *Id.*

In 2021, the Board of Supervisors enacted a redistricting plan, as required every ten years by state and federal law. *Id.* ¶ 27. The Board of Supervisors considered six redistricting plan alternatives and adopted a redistricting plan proposed by an Ad Hoc Citizen Advisory Redistricting Commission. *Id.* ¶ 28. Plaintiffs allege that, despite contrary recommendations during public hearings, the Board of Supervisors adopted a plan that maintained only one district with a majority Latino CVAP. *Id.* ¶¶ 30, 31. The Board of Education adopted the same redistricting plan. *Id.* ¶ 33. Plaintiffs allege that a two-district majority Latino redistricting plan would have lawfully reflected the growth in Stanislaus County's Latino population while meeting the Board of Supervisors' stated districting criteria. *Id.* ¶¶ 29, 31, 34. Plaintiffs allege the 2021 redistricting plan impermissibly dilutes the Latino vote in Stanislaus County and deprives Latino voters, including Plaintiffs, of an equal opportunity to participate in the local political process and elect candidates of their choice on account of their race, color, or language minority status. *Id.* ¶¶ 36, 57.

---

[2] These facts primarily derive from the First Amended Complaint (ECF No. 67).

As part of the redistricting process, counsel for the County hired Q2 Data & Research, LLC ("Q2") "to facilitate and provide redistricting services to redraw the County's supervisorial district boundaries." Declaration of Thomas Boze, County Counsel ¶ 4 (ECF No. 78-7). Within this role, Q2 worked with County staff, County counsel, and outside counsel to "identify and brainstorm solutions to potential Voting Rights Act issues" under the federal Voting Rights Act of 1965 (the "VRA"), for example by providing technical analysis to ensure redistricting proposals complied with the VRA. *Id.* ¶ 7. The County also hired Olson Remcho LLP as outside counsel to work with Q2, County staff, and County counsel to provide legal advice regarding the County's compliance with the VRA. Declaration of Robin Johansen, Olson Remcho Attorney ¶¶ 2-3 (ECF No. 78-8). Additionally, Q2 retained Dr. Megan Gall to provide a racially polarized voting analysis of the County to enable County counsel, Q2, and Olson Remcho to advise the County how to comply with the VRA. *Id.* ¶¶ 6, 9, 11.

**B. Procedural Posture**

On April 22, 2025, Plaintiffs initiated this action against Stanislaus County, the Stanislaus County Board of Supervisors, the members of the Stanislaus County Board of Supervisors (Matthew "Buck" Condit, Vito Chiesa, Terry Withrow, Manmeet "Mani" Grewal, and Channce Condit) in their official capacity, the Stanislaus County Board of Education, the members of the Stanislaus County Board of Education (Chinyere Nnodim-Jack, Alice Pollard, Kim Rose, Mary Sanders, and Paulo Carvalho) in their official capacity, Stanislaus County Chief Executive Officer Jody Hayes in his official capacity, and Stanislaus County Registrar of Voters Donna Linder in her official capacity. FAC ¶¶ 12-18. Plaintiffs assert one cause of action under 42 U.S.C. § 1983 against all Defendants for violation of section 2 of the VRA, 52 U.S.C. § 10301. *Id.* ¶¶ 55-59. For relief, Plaintiffs seek (1) a declaration that the challenged 2021 redistricting plan violates section 2 of VRA; (2) an injunction prohibiting Stanislaus County from holding further elections under the challenged 2021 redistricting plan; (3) an order mandating or adopting a new redistricting plan for the Board of Supervisors and Board of Education in

compliance with the VRA; and (4) costs and attorney's fees. *Id.* ¶ 3, Prayer for Relief.

Following the Supreme Court's decision in *Louisiana v. Callais*, 608 U.S. 85, *judgment entered*, 146 S. Ct. 1111 (2026), which updated the standard to establish liability under Section 2 of the VRA, Plaintiffs filed the First Amended Complaint on June 30, 2026. FAC. Defendants' motions to dismiss the FAC for failure to state a claim are pending before the district court. (ECF Nos. 70, 72.)

**C. Background of the Discovery Dispute**

On November 17, 2025, Plaintiffs served their first set of RFPs on County Defendants. Jt. Stmt. at 4 (ECF No. 78).[3] County Defendants made a rolling production on January 21, March 4, March 23, and April 28, 2026. *Id.* After multiple meet-and-confer efforts, County Defendants produced a privilege log on April 28, 2026. *Id.* Plaintiffs and County Defendants met and conferred on July 24, 2026 regarding outstanding discovery disputes related to County Defendants' production and privilege log. *Id.* After Plaintiffs' motion was filed, County Defendants produced additional documents and an amended privilege log on August 7, 2026. *Id.*, Exh. F, County Defs. 8/7/2026 Am. Priv. Log (ECF No. 78-6).

On August 3, 2026, Plaintiffs filed a motion to compel County Defendants' further responses to Plaintiffs' first set of RFPs. (ECF No. 73.) The parties filed a joint discovery dispute statement on August 11, 2026. Jt. Stmt. The hearing on Plaintiffs' motion was held on August 25, 2026. (ECF No. 87.)

During the August 25, 2026 hearing, Plaintiffs indicated they sought to compel additional documents that were listed in County Defendants' August 7, 2026 Privilege Log but that Plaintiffs had not previously identified as being at issue in the joint discovery

---

[3] Plaintiffs' first set of requests for production to County Defendants was not attached to the Joint Statement. Plaintiffs attached their first set of requests for production to Defendants County of Stanislaus Board of Education, Chinyere Nnodim-Jack, Alice Pollard, Kim Rose, Mary Sanders, and Paulo Carvalho. Jt. Stmt., Exh. E. Pursuant to the Court's minute order on August 24, 2026 (ECF No. 80), Plaintiffs corrected this error and filed their first set of RFPs to County Defendants and County Defendants' responses to Plaintiffs' first set of RFPs. (ECF No. 81.)

dispute statement. Because the parties had not adequately met and conferred on the additional documents Plaintiffs identified, the Court ordered Plaintiffs and County Defendants to meet and confer and file a Supplemental Joint Statement regarding the documents at dispute, namely, the documents at Rows 25, 28, 29, 54, 62, 70, 75, 88, and 89 of County Defendants' August 7, 2026 Privilege Log. 8/25/2026 Order (ECF No. 87). The Court also ordered County Defendants to submit (1) all disputed documents to the Court for *in camera* review; and (2) the cover emails for the documents County Defendants produced after Plaintiffs' motion was filed, namely, the documents at Rows 42, 44, 45, and 52 of the August 7, 2026 Privilege Log. *See id.* The parties met and conferred on August 26, 2026 and filed their Supplemental Joint Statement on August 31, 2026. Suppl. Jt. Stmt. at 2 (ECF No. 88). The parties also submitted a Second Amended Privilege Log that County Defendants served on Plaintiffs on August 26, 2026. Suppl. Jt. Stmt. at 2, Exh. A, County Defs. 8/26/2026 Second Am. Priv. Log (ECF No. 88-1). County Defendants submitted the documents ordered for *in camera* review on August 26, 2026, August 31, 2026, and October 5, 2026.[4] Briefing is now complete.

## II. LEGAL STANDARDS

"The district court is given broad discretion in supervising the pretrial phase of litigation." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citation modified).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality turns on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Broad

---

[4] County Defendants inadvertently did not include one document in their otherwise timely submission of documents for in camera review, and submitted the missing document on October 5, 2026, promptly after being contacted by court staff.

discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation modified).

A party may serve requests to inspect, copy, test, or sample the following in the responding party's possession, custody, or control: "(A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form" or "(B) any designated tangible things." Fed. R. Civ. P. 34(a)(1)(A)-(B). A requesting party is entitled to inspect items within a responding party's possession, custody, or control, regardless of whether the requesting party possesses the same documents. Fed. R. Civ. P. 34(a). The responding party must respond in writing within thirty (30) days, unless otherwise agreed upon or ordered, after being served. Fed. R. Civ. P. 34(b)(2). A party must produce relevant, non-privileged documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). If a responding party objects, the objection "must state whether any responsive materials are being withheld on the basis of that objection[, and] an objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Further, the responding party must supplement a response if the information sought is later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1); E.D. Cal. L.R. 251. The moving party bears the burden to "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013). Local Rule 251 governs motions to compel and requires the parties to confer and attempt to resolve their discovery differences. If there

has been "a complete and total failure to respond to a discovery request or order," the moving party may bring its motion on fourteen (14) days' notice and the requirement for a Joint Statement re Discovery Disagreement is excused. E.D. Cal. L.R. 251(e).

If a court grants the motion to compel or if the disclosure or requested discovery is provided after the motion was filed, then the court must order the party "whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court must not award expenses if (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (2) "the opposing party's nondisclosure, response, or objection was substantially justified"; or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). The burden is on the losing party to prove that its position was substantially justified. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012).

## III. DISCUSSION

Plaintiffs seek certain documents and communications responsive to RFP Nos. 3, 4, 6, 7, 12, 30, 33-45, and 46 in their first set of RFPs to County Defendants. Jt. Stmt. at 5-6, 17-18, 19. In general, these RFPs seek documents related to the development of the Board of Supervisors' 2021 redistricting plan, including documents asserting that the 2021 redistricting plan violates the VRA (RFP No. 3); documents relating to the process of drafting, discussing, and approving the 2021 redistricting plan (RFP Nos. 4, 6, 12, 30); documents reviewed in adjusting district boundaries (RFP No. 7); and documents concerning any proposals to create two Latino-majority districts (RFP No. 46). (ECF No. 81-1 at 4, 5, 8, 10.) Plaintiffs also seek documents relating to County Defendants' affirmative defenses in their Answer (ECF No. 43) to the Complaint (RFP Nos. 33-45). (*Id.* at 8-10.) County Defendants objected to each of these requests on, *inter alia*, attorney-client and attorney-work-product privilege grounds. (ECF No. 81-2 at 6, 7, 8, 10-11, 22, 23-29, 30. County Defendants further objected to RFPs No. 4, 6, 7, and 46 on grounds of legislative privilege. (*Id.* at 6, 7-8, 30.)

As to documents that County Defendants have withheld from production and that are responsive to the foregoing RFPs, Plaintiffs and County Defendants' discovery dispute covers the following categories: (1) documents and communications between County Defendants and their redistricting consultants; (2) documents and communications between County Defendants and outside counsel Olson Remcho, LLP regarding increasing the Latino citizen voting age population in District 5 and including third parties; (3) the County's draft or illustrative maps; and (4) documents supporting each of County Defendants' affirmative defenses. Jt. Stmt. at 7, 14, 17, 19.

**A. Second Amended Privilege Log & New Privileges Asserted**

Before turning to the merits, the Court addresses Plaintiffs' objections to the Second Amended Privilege Log and County Defendants' assertion of privileges not previously asserted. County Defendants served a Second Amended Privilege Log on August 26, 2026. Suppl. Jt. Stmt. at 2, Exh. A (ECF No. 88-1). In the Second Amended Privilege Log, County Defendants asserted the following additional privileges as to certain documents that were not asserted in the prior privilege logs, including the August 7, 2026 First Amended Privilege Log filed with the Joint Statement: the "closed session" privilege for documents at Rows 20, 25, 29, and 62; and the legislative privilege for the document at Row 29.

In the Supplemental Joint Statement, Plaintiffs object to the Second Amended Privilege Log for untimely raising both privileges and for not adequately meeting and conferring regarding the legislative privilege newly asserted for the document at Row 29. *See* Supp. Jt. Stmt. at 7-8. Plaintiffs argue that County Defendants have waived the assertion of both privileges as to these four documents as untimely made. Plaintiffs are correct that County Defendants did not assert these privileges in their First Amended Privilege Log. *Compare* County Defs. Am. Priv. Log (ECF No. 78-6 at 5-18), *with* County Defs. Second Am. Priv. Log (ECF No. 88-1 at 2-15).

The Ninth Circuit has "reject[ed] a *per se* waiver rule that deems a privilege waived if a privilege log is not [timely] produced." *Burlington N. & Santa Fe Ry. Co. v.*

*U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). District courts apply "a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.*; *see also Bearchild v. Pasha*, 2021 WL 2457650, at *9 (D. Mont. June 16, 2021) ("The Court declines to find that the mere failure to assert these protections in a privilege log amounts to a waiver. . . . and prefers to address the matter on the merits.").

The Court concludes that County Defendants have not waived the privileges based on their late assertion. While not ideal, County Defendants asserted these additional privilege grounds for only four documents of 95 documents. One of these documents, the document at Row 20, is not in dispute in this discovery matter. In addition, County Defendants did assert legislative privilege for three of the four documents (Rows 20, 25, and 62) in their prior privilege log. The Court separately addresses whether the closed session privilege is applicable in this case in Section III.C.1 below.

In addition, Plaintiffs have not been prejudiced because they have had the opportunity to address the merits of the asserted legislative privilege and closed session privilege in the parties' Supplemental Joint Statement. *See* Suppl. Jt. Stmt. at 8. The Court also does not find Plaintiffs have been prejudiced by County Defendants' delay where Plaintiffs' arguments against the assertion of the legislative privilege are generally applicable and not targeted specifically to Row 29. *See id.*

The Court also rejects Plaintiffs' argument regarding County Defendants' failure to sufficiently meet and confer as to Row 29. In the August 25, 2026 hearing, Plaintiffs identified ten additional documents they did not identify in the original Joint Statement and that were therefore not addressed by either side, raising concerns about sufficiency of the parties' meet and confer. As a result, instead of denying this late request raised during the hearing or re-starting the clock and requiring Plaintiffs to file a new motion to compel, the Court ordered the parties to meet and confer as to these additional documents and to file a limited Supplemental Joint Statement. (*See* ECF No. 87.) The

Court accepts both sides' explanations for their untimely assertions in this complex discovery dispute. The Court warns the parties that if future discovery disputes arise and the parties fail to sufficiently meet and confer as to all issues, the Court is not inclined to further excuse failures to sufficiently meet and confer, and may deny such discovery disputes without reaching the underlying substantive issue raised.

**B. Documents and Communications Between County Defendants and Redistricting Consultants**

Plaintiffs seek documents and communications between the County and its redistricting consultants, namely, Q2 and Dr. Megan Gall, Ph.D., GISP. Jt. Stmt. at 7. According to the parties' joint discovery dispute statement, the documents originally at issue under this category were those listed on County Defendants' August 7, 2026 Privilege Log at Rows 26, 38-40, 42, 44, 45, and 50-52. *See id.* at 10 & n.1. However, because County Defendants agreed to produce the documents at Rows 42, 44, 45, and 52, Plaintiffs' motion to compel is moot as to those documents.[5] *See id.* at 8, 10. The documents remaining at issue are at Rows 26, 38-40, 50, and 51. Plaintiffs and County Defendants dispute whether the contested documents are protected under the attorney-client privilege or work-product privileges. *Id.* at 7-9, 10-13. The parties also dispute County Defendants' assertion of the legislative privilege, which County Defendants asserted only as to the document at Row 26 on the August 7, 2026 First Amended Privilege Log. *Id.* at 10 n.1, 15, 17.

1. <u>Attorney-Client Privilege</u>

County Defendants assert the attorney-client privilege as to all documents remaining at issue in this category (Rows 26, 38-40, 50, and 51 of the August 7, 2026 First Amended Privilege Log). *See* Jt. Stmt. at 10; County Defs. 8/7/2026 Priv. Log at F-

---

[5] During the August 25, 2026 hearing, the Court ordered County Defendants to submit the cover emails transmitting these documents to Plaintiffs for the Court's review. The Court did not order County Defendants to submit the documents themselves because County Defendants represented at the hearing that the documents are in shapefile format and require specialized geographic information system (GIS) software to review.

6, F-8, F-9, F-10. The attorney-client privilege protects confidential communications between attorneys and clients that are made for the purpose of giving legal advice. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Courts in the Ninth Circuit apply an eight-part test to determine whether the attorney-client privilege applies to a disputed document:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Greer v. County of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)). "Generally, a party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." *Id.* (citation modified). Underlying facts in a communication are not covered by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *see also League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227, 235 (W.D. Tex. 2022) (holding that deposition questions about statistical conclusions constituting technical advice on polarized voting would not be privileged, whereas questions about legal implications of polarized voting would be privileged).

"The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). When a communication may serve a dual purpose beyond legal advice, a court must evaluate whether the primary purpose of the communication is to give or receive legal advice. *Greer*, 127 F.4th at 1224. "[A] dual-purpose communication can only have a single 'primary' purpose." *Id.* (quoting *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021)).

Here, Plaintiffs argue that prongs one through three of the eight-part test have not been established as to Q2 and Dr. Gall because County Defendants have not

established that Q2 and Dr. Gall are professional legal advisors from whom the County sought legal advice, especially where the services agreement between the County and Q2 provides that Q2 "shall not be responsible for providing legal assistance and advice," and County Defendants have not provided evidence of the nature of Dr. Gall's retention. Jt. Stmt. at 7-8, Exh. B at 8. In response, County Defendants argue that Q2 and Dr. Gall are "technical consultants" that the County hired to assist its counsel in providing legal advice by preparing "demographic data," "geographic information," and "draft visualizations" at the direction of a County or Olson Remcho attorney. *Id.* at 10; Declaration of Karin Mac Donald, Q2 Data & Research ¶ 8 (ECF No. 78-9). County Defendants further assert Dr. Gall was hired to perform a "voter polarization analysis" at the direction of Olson Remcho attorneys to assist counsel in providing legal advice. Jt. Stmt. at 11; Johansen Decl. ¶ 6. County Defendants acknowledge, however, that some of Q2's services related to non-legal aspects of redistricting, but County Defendants have not asserted privilege over documents regarding those topics. Boze Decl. ¶ 8.

An instructive discovery case in the federal Voting Rights Act context is *Petteway v. Galveston Cnty.*, 2023 WL 3452065 (S.D. Tex. May 15, 2023). In *Petteway*, the plaintiffs challenged the 2021 Galveston County Commissioners Court redistricting plan and sought discovery of documents relating to the redistricting process, including communications between the County and its general counsel, an outside law firm providing legal advice on redistricting, and a "technical expert" to assist with drawing the map. *Id.* at *1. The district court overruled "the vast majority" of the defendants' assertions of attorney-client and work-product privilege. *Id.* at *4. For example, the court held that the attorney-client privilege did not protect a spreadsheet prepared by the technical expert at outside counsel's request where it contained "only specific factual information" about the population of Galveston County. *Id.* (citation modified). Likewise, after *in camera* review of the contested documents, the court also ordered the production of "[l]ists of current or historical voting precincts and splits," communications by the technical expert seeking guidance from outside counsel in his approach to redistricting,

maps and spreadsheets attached to emails between County agents, correspondence about the "timing and logistics of redistricting," discussion of legislative redistricting strategy, proposed descriptions of voting precincts, alternative map proposals, "[d]ata regarding a map proposal," citations of legal authorities without a corresponding question, and draft redistricting documents. *Id.* at *5-6. The court reasoned that, because redistricting is a "constitutionally required ***legislative activity***" and therefore "part and parcel of the ordinary course of business" of the County Commissioners Courts, the defendants could not shield documents relating to *legislative activity* on broad grounds that they sought legal advice to ensure compliance with redistricting laws. *Id.* at *4 (emphasis in original).

The Court agrees with and follows the approach taken by *Petteway*. The fact that County Defendants retained consultants and outside counsel to advise and assist the County in the redistricting process does not make the communications with outside counsel and the consultants privileged. The consultants provided advice, even if the advice was legal at times, relating to the legislative activity of redistricting and compliance with various laws, including the Voting Rights Act. In addition, the fact that litigation subsequently resulted regarding Stanislaus County's redistricting does not change the analysis as to the documents at issue in this dispute. Like *Petteway*, the Court also overrules most of County Defendants' assertions of privilege. The Court's ruling as to individual documents is provided below.

2. <u>Work-Product Doctrine</u>

County Defendants assert the work-product doctrine as to the following documents remaining at issue: Rows 26, 38-40, 50, and 51 of the August 7, 2026 Privilege Log. *See* Jt. Stmt. at 12; County Defs. 8/7/2026 Priv. Log at F-6, F-8, F-9, F-10. The work-product doctrine is a qualified immunity that protects documents and tangible things from being disclosed during discovery that have been prepared by a party or his representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged

area within which he can analyze and prepare his client's case, and protects both material prepared by agents for the attorney as well as those prepared by the attorney himself." *Sanmina*, 968 F.3d at 1119 (citation modified).

"To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Richey*, 632 F.3d at 567 (citation modified). "[W]here a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *Id.* at 568. "Dual purpose documents are deemed prepared because of litigation if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* (citation modified). As applied in cases involving claims against a legislative body, that entity may not shield documents under the work-product privilege based solely on a general anticipation that its enactments may result in litigation because "[t]hat is the nature of the legislative process: it often involves contentious issues that the public may challenge as being unconstitutional." *Baldus v. Brennan*, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011).

Here, Plaintiffs challenge County Defendants' invocation of the work-product doctrine insofar as the County had only a vague awareness of the threat of litigation. Jt. Stmt. at 8-9. Plaintiffs contest County Defendants' assertion that the County anticipated litigation as early as October 18, 2021 where County Defendants rely on later documents for support, namely, an ACLU email on November 9, 2021 and a Common Cause letter on December 1, 2021. *Id.* at 9. County Defendants respond that the document at Row 26[6] of the August 7, 2026 First Amended Privilege Log establishes that County Counsel had a concrete fear of litigation by mid-October 2021. *Id.* at 12; Boze Decl. ¶¶ 9, 11. Although County Defendants concede no document was prepared exclusively for

---

[6] At the August 25, 2026 hearing, County Defendants clarified that they intended to refer to Row 26 rather than Row 23 as originally stated in the Joint Statement and Boze Declaration.

litigation, the documents withheld were prepared “because of” impending litigation. Jt. Stmt. at 13.

*Petteway* is again instructive. The district court in *Petteway* held that, in light of the defendants’ “legislative duty to redistrict,” the choice “to funnel this process through attorneys . . . does not require this court to transform ordinary legislative activities into attorney work product.” 2023 WL 3452065, at *4. Although the court sustained work-product objections as to documents containing “attorney thoughts and impressions regarding impending litigation,” the court concluded that “the attorney work product doctrine does not apply simply because [the] County outsourced its constitutionally required legislative duty to a law firm.” *Id.* at *6, 7. Thus, the court overruled the defendants’ assertions of work product over documents such as a spreadsheet on the County’s population prepared by a technical expert for outside counsel, communications by the technical expert seeking guidance from outside counsel for the purpose of redistricting, and maps and spreadsheets considered by the County or its agents. *Id.* at *4-6; *see also Ohio A. Philip Randolph Inst. v. Smith*, 2018 WL 6591622, at *4-5 (S.D. Ohio Dec. 15, 2018) (compelling production of maps and data sent to or by outside counsel and overruling work-product objections based on general grounds that redistricting is a highly contentious process); *League of United Latin Am. Citizens v. Abbott*, 2022 WL 3353409, at *5 (W.D. Tex. Aug. 12, 2022) (“The fact that [a redistricting consultant’s] engagement letter with [an outside law firm hired by state legislature] says that [the consultant] was ‘retained in anticipation of litigation’ does not automatically render all documents subject to the work product doctrine.”) (citation modified).

Like *Petteway*, the Court concludes that the work product doctrine does not apply to the documents at issue in this dispute. The County had a legislative duty to redistrict and their decision to use consultants, County counsel, and outside counsel, for redistricting does not transform legislative activities into attorney work product. *See Petteway*, 2023 WL 3452065, at *4. The fact that County counsel or outside counsel directed work by the consultants also does not make this attorney work product because

the work was for the County's redistricting efforts, not for or in anticipation of litigation. In addition, many of the documents at issue facially disprove County Defendants' current claims that the documents were prepared "because of" impending litigation. *See* Jt. Stmt. at 13.

In addition, County Defendants' assertion that the document at Row 26 establishes that County Defendants had a concrete fear of litigation by mid-October 2021 fails. The Court has conducted an in-camera review of the document at Row 26, which consists of email correspondence dated October 18, 2021 to November 2, 2021 between County Counsel and third party Q2 consultant re: "Threatened Litigation over County Redistricting." This correspondence does not establish a concrete fear of litigation as claimed and instead refers to general threats of litigation received by *other* counties regarding redistricting. The fact that litigation subsequently resulted regarding the County's redistricting does not make the documents at issue protected by the work product doctrine.

The Court notes, however, that its ruling is limited to the documents at issue in this current discovery dispute. The Court recognizes that at some point, the work product doctrine would apply to protect "attorney thoughts and impressions regarding impending litigation." *See Petteway*, 2023 WL 3452065, at *6, 7. But that point was not reached in the documents at issue in the current discovery dispute. The Court's ruling as to individual documents is provided below.

3. <u>Legislative Privilege</u>

Of the documents at issue under this disputed category, County Defendants assert legislative privilege only as to the document at Row 26 on the August 7, 2026 Privilege Log. *See* Jt. Stmt. at 10 n.1, 15, 17; County Defs. 8/7/2026 Priv. Log at F-6.

"The legislative privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Petteway*, 2023 WL 3452065, at *7. Because "judicial inquiries into legislative or executive motivation represent a

substantial intrusion," discovery seeking such information "is therefore usually to be avoided." *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). The legislative privilege applies to state and local officials, as well as legislative aides and assistants. *Lee*, 908 F.3d at 1187 & n.12.

Here, Plaintiffs argue that the document at Row 26 of the August 7, 2026 Privilege Log does not fall within the scope of the legislative privilege because it is a communication between County Counsel, other County staff, and third party consultant Q2, and does not include an elected official, legislative aide, or legislative assistant, and therefore does not bear on a legislator's mindset, opinion, or motive. Jt. Stmt. at 15. Plaintiffs argue that to the extent the legislative privilege applies, the communications at issue may be redacted and the rest produced. *Id.*

The Ninth Circuit has not determined whether the legislative privilege extends to communications between legislators and third parties, and district courts are divided on this issue. *See Mi Familia Vota v. Hobbs*, 682 F. Supp. 3d 769, 778-781 (D. Ariz. 2023) (discussing cases). Nonetheless, the Court adopts as persuasive the reasoning of *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024). There, the Fifth Circuit concluded that the legislative privilege "extends to material provided by or to third parties involved in the legislative process because . . . . lawmakers routinely meet with persons outside the legislature . . . to discuss issues that bear on potential legislation as part of the regular course of the legislative process." *Id.* at 322-23. "Third parties" may include advocacy or political interest groups, executive officers, partisans, or constituents. *Id.* at 323 & n.18. The court reasoned that discovery requests seeking to reveal those communications "burden—and therefore deter—legislators from the uninhibited discharge of their legislative duty." *Id.* at 318. Accordingly, the legislative privilege "applies to documents shared, and communications made, between" legislators and third parties who are "brought into the legislative process." *Id.* at 323; *see also Vota v. Noble*, 2024 WL 4371943, at *3 (D. Ariz. Oct. 2, 2024) (sustaining legislative privilege as to

communications between legislators and third parties); *Mi Familia Vota*, 682 F. Supp. 3d at 782 (same); *but see, e.g.*, *League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) ("Communications between legislators or staff members and third parties consulted during the redistricting process are not protected by the legislative privilege. For any relevant documents or information that were shared with third parties sought by Plaintiffs, that might have been protected by the legislative privilege, the privilege is waived.") (citation modified). The Court's ruling as to individual documents is provided below.

4. Ruling by Document

Applying the legal standards identified above, the Court rules as follows for the documents at Rows 26, 38-40, 50, and 51.[7]

a. *Row 26: Produce*

County Defendants assert attorney-client privilege, work product, and legislative privilege over the document at Row 26. This email correspondence is dated October 18, 2021 to November 2, 2021 between County Counsel, individuals in the County Chief Executive Office, and third party Q2 consultant re: "Threatened Litigation over County Redistricting."

This communication relates to the legislative activity of redistricting and underlying facts regarding percentages within districts. Therefore, the attorney-client privilege does not apply. Document 26 is the basis for the County's assertion that it had a concrete fear of litigation beginning in mid-October 2021. As described above, this correspondence does not, however, establish a concrete fear of litigation as claimed and instead refers to general threats of litigation received by *other* counties regarding redistricting. This communication is also therefore not work product as it was not prepared in anticipation of litigation or for trial.

---

[7] Like the parties, the Court refers to the document at issue by row number in Defendants' Amended and Second Amended Privilege Logs. The documents at Rows 26, 38, and 40 also discuss scheduling calls or meetings.

Finally, there is no legislative privilege because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff. A communication's reference to a Supervisor and a fact relayed by the Supervisor does not transform this communication into one protected by legislative privilege. County Defendants must produce the document at Row 26.

b. *Rows 38 and 40: Produce*

County Defendants assert attorney-client privilege and work product over the documents at Row 38 and Row 40. The document at Row 40 includes the document at Row 38, and an additional email. These documents consist of email correspondence dated November 2, 2021 to November 9, 2021 between County Counsel and outside counsel Olson Remcho, and cc's to consultant Q2.

This communication relates to the legislative activity of redistricting, including informing the redistricting commission regarding VRA requirements, discussing redistricting boundaries, and a link to the judgment in *Luna v. County of Kern*, No. 1:16-cv-0568 DAD-JLT (E.D. Cal.). Therefore, the attorney-client privilege does not apply. This communication is also not work product as it was not prepared in anticipation of litigation or for trial, but was prepared for redistricting. County Defendants must produce the document at Row 38.

c. *Row 39: Produce*

County Defendants assert attorney-client privilege and work product over the document at Row 39. This email correspondence is dated November 8, 2021 between consultant Q2 and outside counsel Olson Remcho, including map images and discussing underlying data regarding Latino CVAP (citizen voting age population). This correspondence was then forwarded by outside counsel Olson Remcho to County Counsel, and by County Counsel to a County Assistant Executive Officer.

This communication relates to the legislative activity of redistricting and underlying facts. Therefore, the attorney-client privilege does not apply. This communication is also

not work product as it was not prepared in anticipation of litigation or for trial, but was prepared for redistricting. County Defendants must produce the document at Row 39.

d. *Rows 50 and 51: Produce*

County Defendants assert attorney-client privilege and work product over the documents at Rows 50 and 51. The document at Row 51 includes the document at Row 50, and an additional email. This email correspondence is dated November 8, 2021 to November 15, 2021 between outside counsel Olson Remcho and consultant Q2, with County Counsel added to the some of the emails dated November 15, 2021. This correspondence discusses drawing different district boundaries, underlying data regarding Latino CVAP, and includes map images.

This communication relates to the legislative activity of redistricting and underlying facts. Therefore, the attorney-client privilege does not apply. *See Petteway*, 2023 WL 3452065, at *4-5 (documents prepared in ordinary legislative activity of redistricting, including description of map drawn, not privileged). This communication, including the map images, is also not work product as they were not prepared in anticipation of litigation or for trial, but were prepared for redistricting. County Defendants must produce the documents at Row 50 and 51.

**C. Documents and Communications Between County Defendants and Olson Remcho, LLP**

Under this disputed category, Plaintiffs seek documents and communications with outside counsel, Olson Remcho, LLP, retained by the County, insofar as the documents relate to increasing the Latino citizen voting age population in District 5 or involve third parties. Jt. Stmt. at 14. Plaintiffs initially appeared to seek eight (8) documents listed on the August 7, 2026 First Amended Privilege Log at Rows 26, 38, 39, 40, 44, 45, 50, and 51. *Id.* at 15. These documents overlap with the documents discussed in Section III.B above regarding documents and communications between County Defendants and redistricting consultants, and the Court need not consider them again in this section. As also discussed earlier, because County Defendants have agreed to produce the

documents at Rows 44 and 45, Plaintiffs' motion to compel is moot as to those documents. *See id.* at 8, 10.

Additionally, at the August 25, 2026 hearing, Plaintiffs stated they also sought production of the documents at Rows 25, 28, 29, 54, 62, 70, 75, 88, and 89. The Court ordered the parties to file a supplemental joint statement as to these additional documents. 8/25/2026 Order. Plaintiffs also seek unredacted versions of the documents at Rows 30 and 72, which County Defendants produced redacted. Jt. Stmt. at 14 n.3, Exhs. J, K. Thus, the final list of documents at issue under this category that have not already been addressed are Rows 25, 28, 29, 30, 54, 62, 70, 72, 75, 88, and 89.

Again, Plaintiffs and County Defendants dispute whether all of the challenged documents in this category fall under the attorney-client privilege or work-product privileges as between Olson Remcho and the County. Jt. Stmt. at 14-15, 15-17; Suppl. Jt. Stmt. at 5-6, 11-12; County Defs. 8/7/2026 Priv. Log at F-6, F-7, F-8, F-9, F-10, F-11, F-12, F-14, F-16. Plaintiffs and County Defendants further dispute whether the documents at Rows 25, 29, 30, 54, 62, 70, 72, 75, 88, and 89 are protected under the legislative privilege. *See* Jt. Stmt. at 14 n.3; Suppl. Jt. Stmt. at 7-8, 12-13; County Defs. 8/26/2026 Second Am. Priv. Log at A-3, A-4, A-8, A-9, A-11, A-13. Finally, Plaintiffs and County Defendants dispute whether a "closed session privilege," pursuant to California's Brown Act, Cal. Gov't Code § 54963, applies to the documents at Rows 25, 29, and 62 of County Defendants' August 26, 2026 Privilege Log. Suppl. Jt. Stmt. at 8-9, 13-14; County Defs. 8/26/2026 Second Am. Priv. Log at A-3, A-4, A-9.

1. <u>"Closed Session" Privilege Under the Brown Act</u>

In their supplemental briefing, County Defendants assert a "closed session privilege" under the state Ralph M. Brown Act, Cal. Gov't Code § 54963 (the "Brown Act"), as to the documents identified at Rows 25, 29, and 62. Suppl. Jt. Stmt. at 13. Plaintiffs argue again that County Defendants waived their ability to assert this privilege by failing to raise it until during the parties' August 26, 2026 meet and confer (*see id.* at 7, 8), an argument the Court rejected above. Plaintiffs separately argue that the privilege

does not apply under federal law.

"California law, including the Brown Act, prohibits disclosure of proceedings of a legislative body in closed session, unless authorized by that body." *Portney v. County of Lake*, 2025 WL 2612420, at *1 (N.D. Cal. Sept. 10, 2025) (citing Cal. Gov't Code § 54963(a); *Kleitman v. Superior Court*, 74 Cal. App. 4th 324, 335-36 (Sept. 9, 1999)). The Court agrees with Plaintiffs that the privilege is not recognized under federal law. *See Fabbrini v. City of Dunsmuir,* 2008 WL 2523550, at *3 (E.D. Cal. June 19, 2008) ("The Brown Act does not create any evidentiary privilege. Instead, the Brown Act merely permits withholding certain information from the public.") (citation modified); *Portney*, 2025 WL 2612420, at *1 ("The Brown Act is not a privilege recognized under federal law, and therefore does not apply in this case.") (citation modified). County Defendants have not pointed to any authorities recognizing an evidentiary privilege under the Brown Act under federal law.

The Court is not persuaded by County Defendants' argument that it should recognize an evidentiary privilege under the Brown Act in light of the public interest in ensuring local legislating entities can seek confidential legal advice from their counsel. *See* Suppl. Jt. Stmt. at 13-14. This interest is already protected by the attorney-client privilege. Further, "the fact that the communications were made under the auspices of the Brown Act is only evidence of elements of the [attorney-client] privilege; it is not dispositive to the federal court's determination of application of the privilege." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1126 n.4 (N.D. Cal. 2003).[8]

2. <u>Ruling by Document</u>

Applying the legal standards identified above, including those in Section III.B, the Court rules as follows for the documents at Rows 25, 28, 29, 30, 54, 62, 70, 72, 75, 88, and 89. [9] The Court refers the parties to its ruling as to the documents at Rows 26, 38,

---

[8] As Plaintiffs note, County Defendants do not invoke the federal deliberative process privilege, and the Court declines to address this privilege where the parties have not submitted argument on it. *See* Suppl. Jt. Stmt. at 8 n.5.

[9] The document at Row 25 also discusses scheduling calls or meetings.

39, 40, 50, and 51 in Section III.B.4 above.

a. *Row 25: Produce In Part, Privileged Memorandum*

County Defendants assert attorney-client privilege, work product, legislative privilege, and closed session privilege over the document at Row 25. As described above, County Defendants' assertion of the closed session privilege fails. This email correspondence is dated October 21, 2021 to November 1, 2021 between County Counsel and Olson Remcho re: "Voting Rights Act Issues."

The e-mail correspondence dated October 21, 2021 to October 29, 2021 addresses scheduling a call and whether Olson Remcho can assist the County on VRA and "map drawing" issues. This relates to the legislative activity of redistricting, and therefore, the attorney-client privilege does not apply. Work product does not apply as the correspondence and the memorandum were not prepared in anticipation of litigation or for trial, but were prepared for redistricting. There is no legislative privilege because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff. County Defendants must produce in part the document at Row 38; specifically, the correspondence dated October 21, 2021 to October 29, 2021.

The e-mail dated November 1, 2021 attaches an October 25, 2021 memorandum from County Counsel to the Board of Supervisors, without any additional correspondence. This memorandum provides legal advice, and therefore the attorney-client privilege applies. This memorandum is not work product as it was not prepared in anticipation of litigation or for trial. In addition, there is no legislative privilege over this memorandum because it does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions *between* legislators or between legislators and their staff. The cover email is not, however, privileged, work product, or protected by the legislative privilege.

County Defendants must produce in part the document at Row 38; specifically, the correspondence dated October 21, 2021 to October 29, 2021; and the November 1,

2021 correspondence (cover email only), redacting the title of the memorandum. The October 25, 2021 memorandum is privileged.

*b. Row 28: Produce*

County Defendants assert attorney-client privilege and work product over the document at Row 28. This email correspondence is dated November 2, 2021 between County Counsel and Olson Remcho re: "Draft authority."

This communication relates to the legislative activity of redistricting as it addresses authority for County Counsel's work on redistricting to assist the redistricting commission. Therefore, the attorney-client privilege does not apply. This communication is also not work product as it was not prepared in anticipation of litigation or for trial, but was prepared for redistricting. County Defendants must produce the document at Row 28.

*c. Row 29: Produce*

County Defendants assert attorney-client privilege, work product, legislative privilege, and closed session privilege over the document at Row 29. As described above, County Defendants' assertion of the closed session privilege fails. This email correspondence is dated November 2, 2021 between County Counsel and Olson Remcho re: "Draft authority," and includes the document at Row 28. The additional correspondence provides (1) input on the correspondence in Row 28, and is therefore subject to the same analysis and ruling; and (2) phone numbers for contact to coordinate joining a closed session, which is not subject to any privilege or protection. Therefore, County Defendants must produce the document at Row 29.

*d. Row 30: Produce*

County Defendants produced a redacted version of the document at Row 30, and Plaintiffs seek production of the full unredacted document. County Defendants assert legislative privilege over the document at Row 30. This email correspondence is dated November 3, 2021 between members of the County Chief Executive Office and County Counsel re: "Redistricting BAI and Commission Meeting." There is no legislative privilege

because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff. The communication discusses timelines, what information and data to provide the Commission, contact with consultant Q2, and dates for the Redistricting calendar. County Defendants must produce the complete document at Row 30 unredacted.

*e. Row 54: Produce In Part, Privileged In Part*

County Defendants assert attorney-client privilege, work product, and legislative privilege over the document at Row 54.

The document at Row 54 includes email correspondence dated November 8, 2021 to November 11, 2021 between outside counsel Olson Remcho and consultant Q2 that is also included in the documents at Rows 50 and 51. This correspondence discusses drawing different district boundaries, underlying data regarding Latino CVAP, and includes map images. The parties are directed to the Court's ruling in Section III.B.4.d as to this portion of the document at Row 54, which County Defendants must produce.

The document at Row 54 also includes email correspondence dated November 15, 2021 to November 16, 2021 between outside counsel and County Counsel regarding redistricting and racially polarized voting ("RPV"), and attaching a report from Megan Gall, a consultant "retained by Q2 to conduct an analysis of racially polarized voting in the Stanislaus County, California Board of Supervisors elections." Her report is based on demographic, voting, and historical election data for the County. As her own draft report makes clear, Gall was retained to provide analysis for the redistricting process, not for litigation.

The November 15, 2021 and November 16, 2021 emails from outside counsel to County Counsel, and the consultant's racially polarized voting report relate to the legislative activity of redistricting and underlying demographic, voting, and election data. Therefore, the attorney-client privilege does not apply. The fact that outside counsel

states that the report should be "marked privileged," does not make it privileged. This communication is also not work product as it was not prepared in anticipation of litigation or for trial, but was prepared for redistricting. There is no legislative privilege because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff.

But the November 16, 2021 email from County Counsel to outside counsel is protected by the legislative privilege because it contains the opinions of a legislator (a Supervisor).

Except for the November 16, 2021 email from County Counsel to outside counsel, County Defendants must produce the rest of the document and attachment at Row 54.

*f. Row 62: Produce In Part, Privileged In Part*

County Defendants assert attorney-client privilege, work product, legislative privilege, and closed session privilege over the document at Row 62. As described above, County Defendants' assertion of the closed session privilege fails.

The document at Row 62 includes the document at Row 54 without the attached racially polarized voting report. The parties are directed to the Court's ruling above as to the document at Row 54 for this portion of Row 62. Except for the November 16, 2021 email from County Counsel to outside counsel that is protected by the legislative privilege, County Defendants must produce the portion of Row 62 that includes Row 54.

The remainder of the document at Row 62 includes correspondence dated November 16, 2021 to November 18, 2021 between County Counsel and outside counsel. This correspondence discusses CVAP percentages, district maps, providing information to the Redistricting Commission, and providing a recommendation and summary to the Board of Supervisors regarding racially polarized voting. This correspondence relates to the legislative activity of redistricting, and therefore, the attorney-client privilege does not apply. This correspondence is also not work product as it was not prepared in anticipation of litigation or for trial, but was prepared for

redistricting. There is no legislative privilege because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff.

*g. Row 70: Produce*

County Defendants assert attorney-client privilege, work product, and legislative privilege over the document at Row 70. This email correspondence is dated November 20, 2021 between outside counsel Olson Remcho and County Counsel re: "VRA analyses," and attaches two documents.

This communication and the attachments relate to the legislative activity of redistricting. The first document is a draft of a section for a staff report providing a brief description of the Voting Rights Act and its application to the County's redistricting process. The second document is a response to a request from the Advisory Committee for a "primer" on the Voting Rights Act. This communication and the attachments are also not work product as they were not prepared in anticipation of litigation or for trial, but were prepared for redistricting. There is also no legislative privilege because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff. County Defendants must produce the document at Row 70 and both attachments.

*h. Row 72: Produce*

County Defendants produced a redacted version of the document at Row 72, and Plaintiffs seek production of the full unredacted document. County Defendants assert attorney-client privilege and work product over the document at Row 72. This email correspondence is dated November 22, 2021 to November 23, 2021 and is between various County employees, including within Information Technology, County Chief Executive Office, and County Counsel, regarding a draft presentation for a November 23, 2021 board meeting. The document provided for in-camera review did not include any attachments referenced in the emails.

This communication relates to the legislative activity of redistricting, including

presenting information to the Board of Supervisors, and refers to underlying data and different maps. Therefore, the attorney-client privilege does not apply. This communication, including the draft presentation and map images, is also not work product as they were not prepared in anticipation of litigation or for trial. County Defendants must produce an unredacted version of the document at Row 72.

*i. Row 75: Produce*

County Defendants assert attorney-client privilege, work product, and legislative privilege over the document at Row 75. This email correspondence is dated November 23, 2021 between outside counsel Olson Remcho and County Counsel re: “racially polarized voting analysis” and attaches a revised racially polarized voting report from Megan Gall. This email is related to the email and attachment within the document at Row 54.

As described above, Gall is a consultant retained by Q2 to analyze racially polarized voting for the redistricting process in Stanislaus County; Gall was not retained for litigation purposes. As with the related email and report in Row 54, this email and the revised racially polarized voting report relate to the legislative activity of redistricting and underlying demographic, voting, and election data. Therefore, the attorney-client privilege does not apply. As described above, the fact that outside counsel recommends keeping the report “privileged,” does not make it privileged. This communication and the report are also not work product as they were not prepared in anticipation of litigation or for trial, but were prepared for redistricting. There is also no legislative privilege because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff.

*j. Rows 88 and 89: Produce*

County Defendants assert attorney-client privilege, work product, and legislative privilege over the documents at Rows 88 and 89. Rows 88 and 89 consists of email correspondence dated December 1, 2021 to December 3, 2021, with overlap between

these rows.

The email correspondence begins with a December 1, 2021 email from Communities for a New California (CNC) to the "cobsupport" email box with cc's to Common Cause and the Jakara Movement re: "Racially Polarized Voting in Stanislaus County," and attaching a letter from CNC, Common Cause and the Jakara Movement regarding the same. The letter was a public comment for the December 6, 2021 Special Meeting. This email and letter were first forwarded to County Counsel and members of the County Chief Executive Office; and then forwarded by County Counsel to outside counsel Olson Remcho. It is unclear on what basis County Defendants assert privilege over a third party's public comment letter. Regardless, the third party's public comment letter, and subsequent email correspondence discussing this public comment relates to the legislative activity of redistricting. Therefore, the attorney-client privilege does not apply. This communication and the report are also not work product as they were not prepared in anticipation of litigation or for trial, but were prepared for redistricting. There is also no legislative privilege because the communication does not contain or involve the opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff.

**D. County's Draft and Illustrative Maps**

Plaintiffs contend that County Defendants have improperly withheld draft maps prepared during the 2021 redistricting process requested in RFP Nos. 12 and 30. Jt. Stmt. at 18. Plaintiffs have not specified which, if any, other documents listed on the privilege logs are at issue under this disputed category. Plaintiffs contend that any draft maps constitute fact documents prepared for the legislative redistricting process, which are not protected by attorney-client or work-product privileges. *Id.* at 18. In response, County Defendants argue they have produced the six district maps considered by the Board of Supervisors, the three draft district maps recommended by the Ad Hoc Advisory Commission for consideration, and "additional draft visualizations that were not one of the 6 draft map alternatives considered by the Board of Supervisors" listed on the

August 7, 2026 First Amended Privilege Log at Rows 42, 44, 45, and 52. *Id.* at 18-19.

At the August 25, 2026 hearing, County Defendants reiterated their argument that they had already produced all draft maps within their possession. County Defendants agreed to revise their RFP responses to indicate this, and the Court ordered County Defendants to supplement their RFP responses accordingly. 8/25/2026 Order. Accordingly, because County Defendants will supplement (or may have already supplemented) their responses to Plaintiffs' RFPs indicating they have produced all draft maps within their possession, custody, or control, Plaintiffs' motion to compel is denied as moot as to this category of documents.

**E. Documents Supporting Affirmative Defenses**

Plaintiffs contend that County Defendants have improperly refused to produce any documents underlying their affirmative defenses and have failed to produce a privilege log listing any responsive documents. Jt. Stmt. at 20. County Defendants argue that they need not amend their responses to these RFPs unless and until they raise the same affirmative defenses again to Plaintiff's FAC, which is pending review on Defendants' motions to dismiss. *Id.* at 21. The Court agrees with County Defendants. Plaintiffs' motion to compel as to documents supporting affirmative defenses is denied as moot because there is no current Answer to the FAC, and therefore, no affirmative defenses are at issue.

**IV. CONCLUSION**

In conclusion, IT IS HEREBY ORDERED that:

1. As described above, Plaintiffs' motion to compel (ECF No. 73) is GRANTED IN PART and DENIED IN PART.
2. For the documents ordered produced, County Defendants must produce the documents by close of business on October 13, 2026.

Dated: October 7, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/8, lope.1175.25