UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVIAN AMADOR LOPEZ, et al.,<br>Plaintiffs,<br>v.<br>COUNTY OF STANISLAUS, et al.,<br>Defendants. | Case No. 2:25-cv-01175-DC-CSK<br><br>DISCOVERY ORDER RE: DEPOSITIONS<br>(ECF Nos. 105, 110, 111, 112, 113, 114) |

Pending before the Court are the following six discovery motions: (1) Plaintiffs Vivian Amador Lopez, Juan Telles, John Mataka, and Miguel Donoso's motion for leave to take ten additional depositions (ECF No. 112, 120); (2) Defendants County of Stanislaus, Stanislaus County Board of Supervisors, Matthew "Buck" Condit, Vito Chiesa, Terry Withrow, Manmeet "Mani" Grewal, Channce Condit, Jody Hayes, and Donna Linder's ("County Defendants") motion for a protective order regarding the deposition of County Counsel Thomas Boze (ECF Nos. 111, 120); (3) County Defendants' motion for a protective order regarding the depositions of Defendant Supervisors Matthew Condit, Chiesa, Withrow, and Channce Condit (ECF Nos. 110, 120); (4) Plaintiffs' motion to compel further deposition responses from Defendant Supervisor Grewal (ECF Nos. 113, 121); (5) Plaintiffs' motion to compel further deposition responses from Defendant Jody Hayes (ECF Nos. 114, 121); and

(6) Plaintiffs' motion to compel further deposition responses from Aron Harris (ECF Nos. 105, 109).[1] A hearing was held on November 3, 2026. Ernest Herrera appeared as counsel for Plaintiffs; Beverly Palmer appeared as counsel for County Defendants. (ECF No. 126.) Defendants Stanislaus County Board of Education, Cinyere Nnodim-Jack, Alice Pollard, Kim Rose, Mary Sanders, and Paulo Carvalho are not involved in these discovery disputes.

For the reasons that follow, the Court rules as follows:

1) Plaintiffs' motion for leave to take ten additional depositions (ECF No. 112, 120) is granted in part and denied part.
2) County Defendants' motion for a protective order regarding the deposition of Thomas Boze (ECF Nos. 111, 120) is denied.
3) County Defendants' motion for a protective order regarding the depositions of Defendant Supervisors Matthew Condit, Chiesa, Withrow, and Channce Condit (ECF Nos. 110, 120) is granted in part and denied part;
4) Plaintiffs' motion to compel further deposition responses from Defendant Supervisor Grewal (ECF Nos. 113, 121) is granted in part and denied part.
5) Plaintiffs' motion to compel further deposition responses from Defendant Hayes (ECF Nos. 114, 121) is granted in part and denied part.
6) Plaintiffs' motion to compel further deposition responses from Aron Harris (ECF Nos. 105, 109) is granted in part and denied part.

## I. BACKGROUND

The Court refers to and incorporates the background provided in its October 7, 2026 discovery order and limits this background section to relevant developments in the parties' discovery efforts. *See* 10/7/2026 Order at 2-5 (ECF No. 107).

Plaintiffs' counsel took the deposition of Aron Harris on August 21, 2026. Jt. Stmt. re Harris Dep. at 3 (ECF No. 109). Mr. Harris is a Software Administrator III for

---

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

Stanislaus County and assisted the Ad Hoc Citizen Advisory Commission by drawing County Supervisor district maps. *Id.*

On September 1, 2026, Plaintiffs filed a motion for leave to take five additional depositions, which the Court denied without prejudice as untimely based on the October 1, 2026 deadline for completion of fact discovery then in effect. (ECF Nos. 90, 93); 9/10/2026 Order (ECF No. 95). On September 8, 2026, Plaintiffs filed motions to compel further responses by Mr. Harris and another witness, Damian Martinez, which the Court also denied without prejudice as untimely. (ECF No. 94); 9/10/2026 Order. On September 30, 2026, the district court granted Plaintiffs' motion to modify the scheduling order to provide, among other things, that the completion of fact discovery be extended from October 1, 2026 to December 2, 2026. 9/30/2026 Order (ECF No. 104).

Plaintiffs deposed Defendant Jody Hayes on September 24, 2026 and deposed Defendant Supervisor Grewal on September 28, 2026.[2] Jt. Stmt. re Grewal & Hayes Deps. at 3 (ECF No. 121). As confirmed at the November 3, 2026 hearing, the Rule 30(b)(6) deposition of the County is still ongoing.[3] *See* Jt. Stmt. re Add'l Deps. & Prot. Orders at 2, 9 (ECF No. 120).

The parties met and conferred on July 24, 2026, August 28, 2026, September 30, 2026, October 6, 2026, and October 13, 2026 regarding their discovery disputes. (ECF No. 105 at 2; ECF No. 110 at 2; ECF No. 111 at 2; ECF No. 112 at 2; ECF No. 113 at 2; ECF No. 114 at 2.) After the parties met and conferred on October 13, 2026, Plaintiffs noticed the depositions of Defendants Supervisor Matthew Condit, Supervisor Chiesa, Supervisor Withrow, Supervisor Channce Condit, and County Counsel Thomas Boze.

---

[2] The Court denied without prejudice County Defendants' motion for a protective order as to the deposition of Defendant Supervisor Grewal (ECF No. 89) as untimely under the prior scheduling order. 9/10/2026 Order. County Defendants state that the deposition proceeded in the absence of a protective order. Jt. Stmt. re Grewal & Hayes Deps. at 4 (ECF No. 121).

[3] The Court also denied without prejudice County Defendants' motion for a protective order as to certain deposition topics for the Rule 30(b)(6) deposition of the County (ECF No. 89) as untimely. 9/10/2026 Order.

(ECF No. 110 at 2; ECF No. 111 at 2.) On October 16, 2026, County Defendants provided Plaintiffs with Defendant Hayes's proposed amendments to his deposition transcript with respect to the questions at dispute here. Jt. Stmt. re Grewal & Hayes Deps. at 5. Plaintiffs responded on October 19, 2026 that the proposed amended responses were insufficient as they "suggest that Mr. Hayes's memory could be refreshed on these topics." *Id.*

The parties filed their respective discovery motions on October 6, 2026 and October 13, 2026. (ECF Nos. 105, 106, 110, 111, 112, 113, 114.) The Court ordered the parties to file consolidated discovery dispute joint statements (1) addressing the discovery disputes as to the depositions of Aron Harris and Damian Martinez (ECF Nos. 105, 106); (2) addressing County Defendants' motions for a protective order and Plaintiffs' motion for leave to take additional depositions (ECF Nos. 110, 111, 112); and (3) addressing Plaintiffs' motions to compel further deposition responses (ECF Nos. 113, 114). 10/7/2026 Order (ECF No. 108); 10/14/2026 Order (ECF No. 116). All of these motions were set for hearing on November 3, 2026. *See* 10/16/2026 Order (ECF No. 119). On October 23, 2026, Plaintiffs withdrew their motion to compel further deposition responses from Damian Martinez (ECF No. 106). (ECF No. 124.)

The Court also issued a minute order on October 23, 2026 directing Plaintiffs to file a supplemental statement with the following information: (1) for the nine non-expert depositions taken by Plaintiffs in this action, the dates of each deposition, the deponent's title and role, and a list of the subjects of the deposition testimony elicited; and (2) for the other Voting Rights Act cases identified in the Declaration of Ernest I. Herrera (ECF No. 120 at 43-46), how many non-expert depositions were taken by each side and whether the limit on the number of depositions was agreed to by the parties' stipulation or by court order, and if by court order, a copy of the court order. 10/23/2026 Order (ECF No. 123). Plaintiffs submitted their supplemental statement on October 29, 2026. (ECF No. 125.)

/ / /

## II. LEGAL STANDARDS

"The district court is given broad discretion in supervising the pretrial phase of litigation." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citation modified).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Proportionality turns on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "[B]road discretion is vested in the trial court to permit or deny discovery. . . ." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

"A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). Depositions of non-parties are governed by Federal Rules of Civil Procedure 30 and 45. "The proper method to object to a deposition notice is to move for a protective order under Federal Rule 26(c)." *Mayer v. HSBC Bank USA, Nat'l Ass'n*, 2026 WL 18783, at *1 (N.D. Cal. Jan. 2, 2026). Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1); E.D. Cal. L.R. 251. The moving party bears the burden to "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013). Local Rule 251 governs motions to compel and

requires the parties to confer and attempt to resolve their discovery differences. If there has been "a complete and total failure to respond to a discovery request or order," the moving party may bring its motion on fourteen (14) days' notice and the requirement for a Joint Statement re Discovery Disagreement is excused. E.D. Cal. L.R. 251(e).

If a court grants the motion to compel or if the disclosure or requested discovery is provided after the motion was filed, then the court must order the party "whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court must not award expenses if (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (2) "the opposing party's nondisclosure, response, or objection was substantially justified"; or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). The burden is on the losing party to prove that its position was substantially justified. *See R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

## III. DISCUSSION

### A. Plaintiffs' Motion for Additional Depositions (ECF Nos. 112, 120)

Federal Rule of Civil Procedure 30 presumptively limits a party to ten depositions; a party may only exceed this number with leave of court or by stipulation of the parties. Fed. R. Civ. P. 30(a)(2)(A)(i); *see also* Fed. R. Civ. P. 26(b)(2)(A). The presumptive limit is intended to "promote cost-effective discovery and promote the federal rules' policy of minimizing 'unreasonably cumulative or duplicative' discovery." *Thykkuttathil v. Keese*, 294 F.R.D. 597, 599 (W.D. Wash. 2013) (quoting Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 30 Advisory Committee's Note (1993)). This limit generally applies to non-expert depositions, and expert depositions are not counted in this limit.

"A party seeking to exceed the presumptive limit bears the burden of making a 'particularized showing' of the need for additional depositions." *Mathis v. Larue*, 2025 WL 3120805, at *2 (E.D. Cal. Nov. 7, 2025) (quoting *Thykkuttathil*, 294 F.R.D. at 600). "To make such a showing, a party must show not only that the additional depositions are

warranted, but also that the depositions the party has already taken were warranted." *Galajian v. Beard*, 2016 WL 5373116, at *2 (W.D. Wash. Sept. 26, 2016). "In making an evaluation, courts consider whether (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive; (2) the party seeking discovery has ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, and the importance of the proposed discovery in resolving the issues." *Mathis*, 2025 WL 3120805, at *2 (citation modified).

Plaintiffs seek leave to take 10 additional depositions, grouped for discussion as follows: (1) three additional unspecified witnesses; (2) County Information Technology ("IT") employee Dr. Tim Niblett; (3) Olson Remcho attorney Robin Johansen; (4) County Counsel Thomas Boze; and (5) Defendant Supervisors Chiesa, Withrow, Channce Condit, and Matthew Condit. Jt. Stmt. re Add'l Deps. & Prot. Orders at 2. The Court first addresses preliminary issues, the depositions taken to date, and then turns to each category. Defendants simultaneously move for a protective orders as to County Counsel Thomas Boze and the remaining Defendant Supervisors.

1. <u>Preliminary Issues</u>

The Court first addresses three preliminary issues. First, Plaintiffs argue they are not required to exhaust their presumptive ten depositions before seeking additional depositions. Jt. Stmt. re Add'l Deps. & Prot. Orders at 6-7. Defendants do not appear to disagree. *See generally id.* Though the Court acknowledges that some "courts require a party to exhaust their allowed number of depositions before moving to conduct additional depositions," *Jordan v. Wonderful Citrus Packing LLC*, 2019 WL 176264, at *2 (E.D. Cal. Jan. 11, 2019), Rule 30 does not impose this requirement and courts regularly grant requests to exceed the deposition limit in cases with multiple parties and/or complex issues. *See Gamino v. KPC Healthcare Holdings, Inc.*, 2022 WL 601047, at *5 (C.D. Cal. Feb. 28, 2022). The Court agrees with Plaintiffs that a party need not first exhaust their

ten depositions before seeking leave to take additional depositions beyond the limit. If a party's request to exceed the deposition limit is denied, this could affect a party's decision as to which depositions to take. *See Blackwood v. Vries*, 2015 WL 13914949, at *3 (C.D. Cal. Sept. 25, 2015) ("In a complex case involving multiple parties, it would be prejudicial to require plaintiffs to choose the ten depositions to take before they know whether they will be granted more.") (citation modified). Requiring otherwise may also unnecessarily increase costs and fees for both sides and waste time in deposition preparation. Regardless, the Rule 30(b)(6) deposition of the County that is ongoing constitutes Plaintiffs' tenth non-expert deposition, and Plaintiffs' motion for additional depositions is ripe for determination.

Second, Plaintiffs identified examples of four other VRA cases in which counsel has participated where the ten deposition limit was exceeded. Herrera Decl. ¶ 9 (ECF No. 120 at 45-46); Pls. Supp. Stmt. at 12-14 (Plaintiffs took 19 non-expert depositions and Defendants took 48 depositions in *Perez, et al. v. Abbott, et al.*, No. 5:11-cv-00360-OLG-JES-XR (W.D. Tex. May 9, 2011); Plaintiffs took 15 non-expert depositions and Defendants took 13 non-expert depositions in *Patiño, et al. v. City of Pasadena, et al.*, No. 4:14-cv-03241 (S.D. Tex. Nov. 12, 2014); Plaintiffs took 25 non-expert depositions and Defendants took 10 non-expert depositions in *LULAC v. Abbott*, No. 3:21-cv-00259 (W.D. Tex. Oct. 18, 2021); and Plaintiffs took 15 non-expert depositions and Defendant-Intervenors took 5 non-expert depositions in *Soto Palmer v. Hobbs*, No. C22-5035RSL (W.D. Wash. Jan 19, 2022)). Plaintiffs' examples demonstrate that it is common in VRA cases, which often present complex issues, to exceed the ten-deposition limit.

Third, in their Initial Disclosures, County Defendants identified 40 individuals with discoverable information whom County Defendants may use to support their claims or defenses. Jt. Stmt. re Add'l Deps. & Prot. Orders, Exh. A (ECF No. 120 at 25-37). While four of these 40 individuals are the named plaintiffs, 36 are other individuals who are not plaintiffs. The only individuals Plaintiffs have deposed or seek to depose who are not identified by County Defendants in their Initial Disclosures are four Defendant

Supervisors, County Counsel Boze, and outside counsel Johansen. The Court next turns to the non-expert depositions Plaintiffs have already taken.

2. Plaintiffs' Depositions Already Taken

Plaintiffs must show that the depositions they have already taken were warranted. *See Galajian*, 2016 WL 5373116, at *2. Plaintiffs have already deposed nine witnesses and are in the process of taking the County's 30(b)(6) deposition. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders, Exh. B, Herrera Decl. ¶ 2 (ECF No. 120); Pls. Supp. Stmt. (ECF No. 125). In Plaintiffs' supplemental statement, Plaintiffs identified and summarized the nine non-expert depositions taken to date.[4]

i) Aron Harris (8/21/2026)- County Software Administrator III for Stanislaus County in the Information Technology Central Department and served on the County's project team for the County's 2021 redistricting process.

ii) Carmen Morad (8/26/2026)- Representative from District 3 on the Ad Hoc Citizen Advisory Redistricting Commission.

iii) Damian Martinez (9/3/2026)- Senior management consultant in the Stanislaus County Executive Office and served as the facilitator, moderator, and project lead for the County's 2021 redistricting project.

iv) Rule 30(b)(6) of Q2 Data and Research, LLC- Q2 was hired for redistricting services. Karin MacDonald, a Q2 employee, served as Q2's 30(b)(6) witness.

v) Solange Gonçalves Altman (9/23/2026)- Retired attorney and alternate on the Ad Hoc Citizen Advisory Redistricting Commission.

vi) Jody Hayes (9/24/2026)- Chief Executive Officer of Stanislaus County and served on the Redistricting Steering Committee during the County's 2021 redistricting process.

vii) Megan Gall (9/25/2026)- Dr. Gall was retained by Q2 "to provide a racially

[4] The Court incorporates Plaintiffs' summary of the subjects of each deposition provided in their Supplemental Statement. *See* Pls. Supp. Stmt. at 2-9.

polarized voting analysis of the County to enable County counsel, Q2, and [outside counsel] Olson Remcho to advise the County how to comply with the" VRA. Pls. Supp. Stmt. at 9; 10/7/2026 Order at 3.

viii) Defendant Manmeet "Mani" Grewal (9/28/2026)- named defendant and Supervisor for the Fourth District of the Stanislaus County Board of Supervisors.

ix) Andrew Genasci (9/30/2026)- Alternate on the Ad Hoc Citizen Advisory Redistricting Commission.

Pls. Supp. Stmt.

As demonstrated by the summaries provided in Plaintiffs' Supplemental Statement, Plaintiffs have sufficiently established that the depositions they have already taken were warranted. *See id.*; *Galajian*, 2016 WL 5373116, at *2. In addition, with the exception of Defendant Supervisor Grewal, the other eight deponents were identified by County Defendants in their Initial Disclosures as witnesses County Defendants may use to support their claims or defenses. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders, Exh. A.[5] Plaintiffs are in the process of taking their tenth non-expert deposition, the Rule 30(b)(6) deposition of Defendant County. At the November 3, 2026 hearing, the parties informed the Court that the Q2 depositions (Rule 30(b)(6) with Karin MacDonald and Dr. Gall) will be re-opened given the Court's October 7, 2026 discovery order.

The Court now turns to the additional requested depositions by Plaintiffs to determine whether those depositions are warranted.

3. <u>Requested Deposition of Three Unspecified Witnesses: Denied</u>

As to the three unspecified deponents Plaintiffs seek leave to depose, Plaintiffs have failed to make a particularized showing because "[t]he Court has no information by which to evaluate whether these depositions would be cumulative, duplicative,

---

[5] County Defendants identified two individuals associated with Q2 in their Initial Disclosures, Karin MacDonald and Megan Gall. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders, Exh. A at 4-5.

burdensome, or relevant." *Kaseberg v. Conaco, LLC*, 2016 WL 8729927, at *4 (S.D. Cal. Aug. 19, 2016). Thus, Plaintiffs' motion is denied as to the depositions of three unspecified witnesses. *See id.*

4. <u>Requested Deposition of County IT Employee Dr. Niblett: Granted</u>

Plaintiffs state they have a particularized need to depose Dr. Niblett because he was involved in redistricting and drew maps, and any instructions he received from the County Board of Supervisors is relevant to establish the Board of Supervisors' discriminatory intent. Jt. Stmt. re Add'l Deps. & Prot. Orders at 6. According to Plaintiffs, Defendants have argued the Supreme Court's recent decision in *Louisiana v. Callais* requires Plaintiffs to show evidence of discriminatory intent to succeed on their claims under section 2 of the Voting Rights Act of 1965 ("VRA"). *See id.* at 4 (citing *Louisiana v. Callais*, 608 U.S. 85 (2026)). Plaintiffs further argue that Dr. Niblett's testimony would not be duplicative or cumulative because no witness has testified to instructions given to Dr. Niblett or the maps that Dr. Niblett drew, and Plaintiffs argue they have not had ample opportunity to obtain this information where they have only deposed two of Dr. Niblett's colleagues and the Rule 30(b)(6) deposition of the County is ongoing. Jt. Stmt. re Add'l Deps. & Prot. Orders at 6.

In opposition, County Defendants argue the deposition of Dr. Niblett would be cumulative because Plaintiffs could have but failed to present relevant questions to Dr. Niblett's IT colleagues, namely Mr. Harris and Dr. Martinez, or to three Commission members Plaintiffs already deposed, all of whom could have testified about Dr. Niblett's involvement in redistricting. *Id.* at 9. Further, according to Defendants, Plaintiffs can ask about the County's instructions to Dr. Niblett in the ongoing Rule 30(b)(6) deposition of the County. *Id.*

The Court concludes Plaintiffs have made the required particularized showing for the deposition of Dr. Niblett. At the hearing, the parties clarified that Dr. Niblett also drew maps that County Defendants states were not presented to the Commission or Board of Supervisors and that Dr. Niblett is the only individual who can testify as to these maps.

While County Defendants dispute the relevance of such maps as to intent where the maps were not presented to the Commission or Board of Supervisors, County Defendants produced Dr. Niblett's maps in discovery and have not identified any individual who could testify as to these maps. In addition, the Supreme Court has made clear that identifying alternative districting maps is one way "[a] plaintiff may carry its disentanglement burden." *Callais*, 608 U.S. at 115 ("A plaintiff may carry its disentanglement burden by offering an alternative map that achieves all the State's objectives—including partisan advantage and any of the State's other political goals—at least as well as the State's map."). Accordingly, Plaintiffs' motion is granted as to the deposition of Dr. Niblett. *See Mathis*, 2025 WL 3120805, at *2.

5. <u>Requested Deposition of Olson Remcho Attorney Johansen: Granted</u>

Plaintiffs seek to depose Olson Remcho Attorney Johansen regarding her recommendations to the Ad Hoc Citizen Advisory Redistricting Commission (the "Commission") regarding Hispanic citizen voting-age population, including that it draw a district with 55 percent Hispanic citizen voting-age population. Jt. Stmt. re Add'l Deps. & Prot. Orders at 5; Altman Dep. at 106:5-21. Plaintiffs contend they need to depose Ms. Johansen because how Ms. Johansen arrived at the 55-percent threshold and the extent to which County Defendants directed Ms. Johansen's recommendation relate to discriminatory intent. Jt. Stmt. re Add'l Deps. & Prot. Orders at 5. Plaintiffs assert no other witness has testified as to Ms. Johansen's reasoning and Plaintiffs did not have ample opportunity to obtain this information where "the Court just compelled production of documents involving Olson Remcho attorneys." *Id.*

In opposition, County Defendants argue there is no particularized need to depose Ms. Johansen because another witness testified that Ms. Johansen's 55-percent recommendation was "necessary to comply with the VRA" and Plaintiffs already have the racially polarized voting analysis prepared by the County's outside consultants, which provides the foundation for Ms. Johansen's recommendation. *Id.* at 10; Altman Dep. at

106:7-11. County Defendants also contend Plaintiffs can ask related questions at the County's ongoing Rule 30(b)(6) deposition. Jt. Stmt. re Add'l Deps. & Prot. Orders at 10. Unlike County Counsel Boze, County Defendants do not assert any privilege as to the requested deposition testimony and do not move for a protective order as to Ms. Johansen's deposition.

County Defendants' arguments fail. Plaintiffs have sufficiently established that Ms. Johansen's testimony is not cumulative or duplicative, and is not obtainable from another source that is more convenient, less burdensome or less expensive. *See Mathis*, 2025 WL 3120805, at *2. The racially polarized voting analysis, related communications, and the Rule 30(b)(6) deposition of the County only provide a limited portion of the information sought, and are an insufficient substitute. For example, the racially polarized voting analysis and related emails may be related to the information sought, but do not provide the complete information sought related to Ms. Johansen's recommendations to the Commission. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders, Exhs. D & E (ECF No. 120 at 72-84). In addition, County Defendants clarified at the November 3, 2026 hearing that unlike the Board of Supervisor meetings that were recorded and those recordings were provided to Plaintiffs, the meetings with and presentations to the Commission were not recorded, which provides further justification for the discovery sought from Ms. Johansen. Finally, the burden or expense do not outweigh the benefits, taking into account the needs of this case, the parties' resources, and the importance of the proposed discovery. *See Mathis*, 2025 WL 3120805, at *2; Fed. R. Civ. P. 26(b)(1).

Plaintiffs may depose Olson Remcho counsel Johansen limited to her recommendations to the Commission, her meetings with and presentations to the Commission, and her communications ordered produced in the Court's October 7, 2026 order, which the Court has already ruled are not privileged or work product.

6. <u>Requested Deposition of County Counsel Boze</u>

Plaintiffs' requested deposition of County Counsel Boze is addressed below in Section III.B.

7. <u>Requested Deposition of Four Remaining Defendant Supervisors</u>

Plaintiffs' requested deposition of the four remaining Defendant Supervisors is addressed below in Section III.C.

**B. Deposition of County Counsel** (ECF Nos. 111, 112, 120)

Plaintiffs seek to depose County Counsel Boze regarding a presentation he gave to the Commission that included a "VRA overview" and recommendations to draw "'a single supermajority district' of Hispanic voters." Jt. Stmt. re Add'l Deps. & Prot. Orders at 5; *see also id.*, Exh. C, Deposition of Solange Altman ("Altman Dep.") at 176:6-8 (ECF No. 120). Plaintiffs argue that the extent to which County Defendants directed Mr. Boze to make that presentation bears on County Defendants' discriminatory intent and is crucial for Plaintiffs' burden to "show intentional discrimination" pursuant to *Callais*. Jt. Stmt. re Add'l Deps. & Prot. Orders at 5, 20-21. Plaintiffs assert this deposition would not be duplicative or cumulative because no other witness has testified about the content of Mr. Boze's presentation to the Commission. *Id.* at 5, 20-21. Plaintiffs contend they did not have ample opportunity to inquire about this information until it came to light during the deposition of former commissioner Solange Altman on September 23, 2026. *Id.* at 5; *see* Altman Dep. 176:6-8. Plaintiffs further argue that the information sought is not subject to legislative privilege or attorney-client privilege. Jt. Stmt. re Add'l Deps. & Prot. Orders at 20-21.

County Defendants oppose Plaintiffs' request and also seek a protective order to prevent County Counsel's deposition. County Defendants dispute that the deposition of Mr. Boze is relevant because, in that presentation to the Commission, Mr. Boze never gave instructions to the Commission but simply reported analyses by County Defendants' outside counsel and consultants. Jt. Stmt. re Add'l Deps. & Prot. Orders at 9-10. Defendants further argue Plaintiffs have other evidence underlying Mr. Boze's presentation to the Commission, such as the racially polarized voting analysis, Mr. Boze's email communications that were recently produced, the video recording of Mr. Boze's public presentation to the Board of Supervisors, and the County's ongoing Rule

30(b)(6) deposition. *Id.* at 10 & n.7. County Defendants also move for a protective order as to Mr. Boze's deposition on similar grounds, and also because Defendants contend it is improper to depose defense trial counsel, Mr. Boze's recollection of events in 2021 are limited, and his present knowledge may be intertwined with his work defending the County in this lawsuit. *Id.* at 19-20.

1. Legal Standards

In addition to the legal standards identified above for taking additional depositions, the Court also considers the following standards. "The Court may permit the deposition of opposing counsel in limited circumstances when the party seeking the deposition shows: (1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Wagner v. Shasta County*, 2022 WL 3636363, at *1 (E.D. Cal. Aug. 23, 2022) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). "Motions to depose opposing counsel are disfavored." *Wagner*, 2022 WL 3636363, at *1; *see also Theriot v. Par. of Jefferson*, 1996 WL 586386, at *2 (E.D. La. Oct. 9, 1996) (quashing deposition subpoena of defendant's counsel where premise that counsel were the only persons with information about redistricting was speculative), *aff'd*, 185 F.3d 477 (5th Cir. 1999).

The attorney-client privilege protects confidential communications between attorneys and clients that are made for the purpose of giving legal advice. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Courts in the Ninth Circuit apply an eight-part test to determine whether the attorney-client privilege applies to a disputed communication:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Greer v. County of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (quoting *United*

*States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)). "Generally, a party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." *Id.* (citation modified). Underlying facts in a communication are not covered by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *see also League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227, 235 (W.D. Tex. 2022) (holding that deposition questions about statistical conclusions constituting technical advice on polarized voting would not be privileged, whereas questions about legal implications of polarized voting would be privileged).

As discussed in this Court's October 7, 2026 discovery order, *Petteway v. Galveston County*, 2023 WL 3452065 (S.D. Tex. May 15, 2023), is instructive. The court reasoned that, because redistricting is a "constitutionally required ***legislative activity***" and therefore "part and parcel of the ordinary course of business" of the County Commissioners Courts, the defendants could not shield discoverable information relating to legislative activity on broad grounds that they sought legal advice to ensure compliance with redistricting laws. *Id.* at *4 (emphasis in original); *see also* 10/7/2026 Order at 12-13.

The Court also refers to the legal standards for legislative privilege provided below. *See* Section III.C.1.

2. <u>Discussion</u>

Plaintiffs have established that no other means exist to obtain the information sought because the other means provide only partial or limited information, the information sought is relevant and not privileged, and the information is crucial to the preparation of the case. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders at 5, 20-21, Altman Dep. 175:22-177:15; *Wagner*, 2022 WL 3636363, at *1. Plaintiffs have further established the factors to increase the ten-deposition limit. *See Mathis*, 2025 WL 3120805, at *2; Fed. R. Civ. P. 26(b). Though Defendants argue that there are other sources for the information, such as the racially polarized voting analysis, certain emails

involving County Counsel Boze recently ordered produced, and the Rule 30(b)(6) deposition of the County, these other sources only provide a limited portion of the information sought. For example, the racially polarized voting analysis and related emails may be related to the information sought, but do not provide the complete information sought related to the presentation County Counsel Boze gave to the Commission. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders, Exhs. D & E (ECF No. 120 at 72-84). In addition, County Defendants clarified at the hearing that unlike the Board of Supervisor meetings that were recorded and those recordings were provided to Plaintiffs, the meetings with and presentations to the Commission were not recorded, which provides further justification for the discovery sought.

While the Court recognizes that depositions of opposing counsel or trial counsel should be avoided, the situation in this case is different from most cases because the County used its counsel and outside counsel Olson Remcho in the mandated legislative activity of redistricting before this lawsuit began and before County Defendants had a concrete fear of legislation. The Court further notes that County Defendants have retained separate outside counsel for this lawsuit, and therefore will have separate counsel for County Counsel at his deposition.

As the Court held in its October 7 order, the attorney-client privilege does not apply to communications related to the legislative activity of redistricting, or to underlying facts or data. *See* 10/7/2026 Order. The privilege does apply to County Counsel's legal advice to the Board of Supervisors, as the Court previously held, and Plaintiffs may not question Mr. Boze about his legal advice to the Board of Supervisors. *See id*. County Defendants do not argue, however, that Mr. Boze's or outside counsel Olson Remcho's statements or advice to the Commission are privileged. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders at 10, 19-20. As the Court also held in its October 7, 2026 order, the legislative privilege does not apply to all communications with or referencing a legislator. *See* 10/7/2026 Order.

Plaintiffs may depose County Counsel Boze limited to his meetings with and

presentations to the Commission and his communications ordered produced in the Court's October 7, 2026 order, which the Court has already ruled are not privileged or work product. To further ensure that questioning is limited to the narrow, non-privileged topics identified, and to address some of County Defendants' concerns, any deposition of Mr. Boze will be limited to two hours.

**C. Depositions of Supervisor Defendants** (ECF Nos. 110, 112, 120)

Plaintiffs argue they need to depose the remaining Defendants Supervisors Chiesa, Withrow, Channce Condit, and Matthew Condit because testimony regarding their motivations behind choosing the enacted map and their public statements are relevant to show discriminatory intent, which Plaintiffs argue is necessary to succeed on their VRA claim under *Callais* and Defendants' interpretation of *Callais*. Jt. Stmt. re Add'l Deps. & Prot. Orders at 4. Plaintiffs argue these depositions would not be duplicative or cumulative because each individual supervisor's motivation is relevant. *Id.* at 4-5. Plaintiffs further argue that they have not had an opportunity to obtain similar evidence through written discovery. *Id.* at 5. County Defendants respond that Plaintiffs already have evidence of the Defendant Supervisors' public statements through recordings. *Id.* at 9. County Defendants also argue that Plaintiffs have not established a particularized need to depose each remaining Supervisor where, in Plaintiffs' motion to compel further responses from Defendant Supervisor Grewal, they argue that his testimony would serve to represent the intent of other supervisors. *Id.*

County Defendants also move for a protective order as to the remaining Defendant Supervisors depositions. First, County Defendants assert that the legislative privilege prohibits taking the Supervisors' depositions. Jt. Stmt. re Add'l Deps. & Prot. Orders at 11-13. Second, County Defendants argue the "apex doctrine" also prohibits the depositions. *Id.* at 13-14. Third, County Defendants argue depositions of every member of the Board of Supervisors would be cumulative and unduly burdensome under Rule 26(b)(1). *Id.* at 14. County Defendants proposed written interrogatories directed to the Supervisors as an alternative. *See id*. In opposition, Plaintiffs argue the legislative

privilege does not generally bar depositions from being taken and that the legislative privilege may be overcome in light of the circumstances of this case. *Id.* at 15-17. Second, while Plaintiffs contest the applicability of the apex doctrine to members of a County Board of Supervisors, they argue the Defendant Supervisors have unique knowledge of their own motivations for supporting the final map, and no other means exist to obtain this information. *Id.* at 17-18. Third, Plaintiffs argue that the importance of each supervisor's testimony in light of their evidentiary burden under *Callais* outweighs the burden to the Defendant Supervisors. *Id.* at 18.

1. Legislative Privilege

Legislative privilege is a qualified, not absolute, privilege. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 731 (9th Cir. 2025) (citing *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018)), cert. granted sub nom. *Republican Nat'l Comm. v. Mi Familia Vota*, 146 S. Ct. 2799 (2026). "The legislative privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Petteway*, 2023 WL 3452065, at *7. Because "judicial inquiries into legislative or executive motivation represent a substantial intrusion," discovery seeking such information "is therefore usually to be avoided." *Lee*, 908 F.3d at 1187 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). The legislative privilege applies to state and local officials, as well as legislative aides and assistants. *See id.* at 1187 & 1187 n.12.

In the Court's October 7, 2026 order, the Court addressed legislative privilege as to certain written communications that were in dispute. *See* 10/7/2026 Order. The Court held that the legislative privilege applied to only one written communication at issue (a portion of the document at Row 54 and Row 62). *See id*. at 25-26. The Court concluded that the November 16, 2021 email from County Counsel to outside counsel in the documents at Row 54 and Row 62 was protected by the legislative privilege because it contained the opinions of a legislator (a Supervisor). *See id*. at 26. The Court's ruling as

to legislative privilege was limited to the issues presented.

2. Apex Doctrine

The apex doctrine provides that "absent extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions." *Soto v. County of Sacramento*, 2020 WL 5110372, at *1 (E.D. Cal. Aug. 31, 2020). The apex doctrine applies to government decision-makers such as County Supervisors. *See Lull v. County of Sacramento*, 2020 WL 3412708, at *2 (E.D. Cal. June 22, 2020). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Harding v. County of Dallas*, 2016 WL 7426127, at *7-8 (N.D. Tex. Dec. 23, 2016) (applying apex doctrine to county commissioners in case involving VRA challenge to redistricting and concluding plaintiffs could obtain information through less intrusive means than a deposition).

3. Discussion

County Defendants argue that their protective order should be granted because the legislative privilege prohibits taking the Supervisors' depositions under the Ninth Circuit's decision in *Lee v. City of Los Angeles*. In *Lee*, plaintiffs challenged the City of Los Angeles's 2012 redistricting of its Council Districts as a violation of the Equal Protection Clause of the Fourteenth Amendment on the basis of race and as a violation of the California Constitution. 908 F.3d 1175. The *Lee* plaintiffs appealed the district court's grant of a protective order prohibiting plaintiffs from deposing City officials regarding its redistricting.[6] *Id*. The Ninth Circuit affirmed the district court's order. *Id.* at 1188. Although the Ninth Circuit recognized that plaintiffs had made "serious allegations" of racial gerrymandering, it declined to create "a categorical exception [to the legislative

---

[6] The *Lee* plaintiffs also appealed the district court's grant of summary judgment to the City on their Equal Protection claim. *Lee*, 908 F.3d 1175.

privilege] whenever a constitutional claim directly implicates the government's intent." *Id.* The Ninth Circuit compared the case to the *Village of Arlington Heights*, which "itself also involved an equal protection claim alleging racial discrimination—putting the government's intent directly at issue—but nonetheless suggested that such a claim was not, in and of itself, within the subset of 'extraordinary instances' that might justify an exception to the privilege." *Id.* Thus, "[w]ithout sufficient grounds to distinguish those circumstances from the case at hand, . . . the district court properly denied discovery on the ground of legislative privilege." *Id.* The Voting Rights Act was not at issue in *Lee* and was not addressed. *See Lee*, 908 F.3d 1175.

Here, Plaintiffs' only claim in their First Amended Complaint is a Voting Rights Act Section 2 claim. *See* First Am. Compl. at 11-12 (ECF No. 67). The Supreme Court's recent decision in *Callais* "updated" the standards to prove a Section 2 claim. *See Callais*, 608 U.S. at 118-22 (describing changes to the *Gingles* framework for Section 2 claims from *Thornburg v. Gingles*, 478 U.S. 30 (1986)); *see also Allen v. Milligan*, 608 U.S. 511, 512 (June 2, 2026). Plaintiffs argue that under *Callais*, deposing the Supervisors is warranted to discover their motivations in choosing the enacted map.

In *Callais*, non-black voters challenged the state of Louisiana's 2024 congressional district map that added a second majority-black district (also called a "majority-minority district") as a racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment and for intentional discrimination in violation of the Fourteenth and Fifteenth Amendments. *Callais v. Landry*, 732 F. Supp. 3d 574 (W.D. La. 2024); *see also Callais*, 608 U.S. 85. Before *Callais*, black voters challenged Louisiana's 2022 congressional district map for diluting their vote as a violation of Section 2 of the Voting Rights Act in *Robinson v. Ardoin*, 605 F. Supp. 3d 759 (M.D. La. 2022). The *Robinson* district court granted plaintiffs' motion for a preliminary injunction, holding that plaintiffs were likely to prevail on their Section 2 claim, enjoining the state from using the 2022 map, and ordering the state legislature to enact a new map that included a second majority-black district. 605 F. Supp. 3d at 851-52, 856, 858. The state subsequently

created a new map in 2024 that added a second majority-black district, and this map was challenged in *Callais*. After the three-judge *Callais* district court held a bench trial, the court held that the new map violated the Equal Protection Clause as an impermissible racial gerrymander. *Callais*, 732 F. Supp. 3d 574.

The *Callais* Supreme Court affirmed the district court and held that "§ 2 imposes liability only when the evidence supports a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Callais*, 608 U.S. at 116. Courts have described this as the most significant change made by *Callais*. *See Alpha Phi Alpha Fraternity, Inc. v. Sec'y, State of Georgia*, 2026 WL 2491616, at *1 (11th Cir. Aug. 25, 2026) ("Perhaps most significantly, *Callais* held that Section 2's remedial power to compel race-based redistricting falls within Congress's Fifteenth Amendment authority only 'when the circumstances give rise to a strong inference that intentional discrimination occurred.'" (quoting *Callais*, 608 U.S. at 113)). *Callais* provides one example of evidence that would be sufficient to provide the "strong inference" of intentional discrimination:

> Suppose, for example, that the application of a State's districting algorithm yields numerous maps with districts in which the members of a minority group constitute a majority, and suppose that the State cannot provide a legitimate reason for rejecting all those maps and eliminating all majority-minority districts. In such a situation, the inference of racial motivation is strong, and § 2 of the Fifteenth Amendment permits the imposition of liability without demanding that the courts engage in the fraught enterprise of attempting to determine whether the state legislature as an institution, as opposed to certain individual members or the State's hired mapmaker, was motivated by race.

*Callais*, 608 U.S. at 113. This suggests that for a Section 2 claim, the legislative body must provide its reasons for rejecting certain districting maps. This further suggests that examining individual motivations may be permissible, but not required.

The *Callais* Court also updated the standard as to plaintiffs' "'special' burden to overcome" if the legislative body "defends a districting scheme on the ground that it was drawn for partisan purposes." 608 U.S. at 115-16. Plaintiffs then have a

"disentanglement burden" that requires plaintiffs to "disentangle race from the [legislative body]'s race-neutral considerations, including politics." *Id*. Plaintiffs "may carry [their] disentanglement burden by offering an alternative map that achieves all the State's objectives—including partisan advantage and any of the [legislative body]'s other political goals—at least as well as the [legislative body]'s map." *Id*. at 115.

Not many courts have addressed the evidence needed to prove a Section 2 claim post-*Callais* or the resulting discovery issues. At least one district court has granted a request to re-open discovery to further develop the record in light of *Callais* where the record was "incomplete" as to the state legislature's "objectives" in enacting the districting map. *See White v. State Bd. of Election Commissioners*, 2026 WL 1963806, at *3-4 (N.D. Miss. July 7, 2026). In *White*, the district court's decision holding that the Mississippi Supreme Court electoral map violated Section 2 of the Voting Rights Act was vacated and remanded in light of *Callais*. 2026 WL 1963806. On remand, the district court granted defendants' request to reopen discovery where "the record is incomplete as to the Mississippi Legislature's objectives when enacting the [state] Supreme Court electoral map." *Id*. at *3-4.

Though the issue of legislative privilege was not before the Supreme Court in *Callais*, it appears unlikely that the Supreme Court would have held that "§ 2 imposes liability only when the evidence supports a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race," or would have required Section 2 plaintiffs to achieve their "special" disentanglement burden by offering an alternative districting map that achieves all of the legislative body's identified "objectives" at least as well as the selected map, 608 U.S. at 115-16, but then preclude discovery to gather evidence to prove or defend against a Section 2 claim, including identifying what those claimed "objectives" were. Finally, the Court also notes that at the bench trial in *Callais*, four state legislators testified, though the record does not indicate that their testimony was compelled. *Callais*, 732 F. Supp. 3d at 590-92 (summarizing testimony of legislators).

Taking into consideration legislative privilege, the apex doctrine, the "updated" standards in *Callais* for VRA Section 2 claims, and Rule 26(b) considerations, the Court concludes that County Defendants' proposal of written interrogatories directed to the remaining Defendant Supervisors as an alternative to depositions strikes the appropriate balance. The Court agrees with Defendants that there are less intrusive means for Plaintiffs to obtain the information sought than by deposition. *See* Jt. Stmt. re Add'l Deps. & Prot. Orders at 13-14 (apex doctrine). The Court therefore grants in part and denies in part Plaintiffs' motion for additional depositions as to the remaining Defendant Supervisors and grants in part and denies in part Defendants' corresponding motion for a protective order.[7]

The Court orders the parties to meet and confer in-person, by video, or by phone regarding the interrogatories directed to the remaining Defendant Supervisors, including discussing the proposed language of the interrogatories to avoid any additional motion practice on this discovery issue. The parties have already filed extensive discovery-related motions.

The Court sets forth the following parameters to provide guidance to the parties and again, to avoid any additional discovery motion practice. First, interrogatories directed to the remaining Defendant Supervisors pursuant to this order will not count against the 25-interrogatory limit under Rule 33(a)(1). Plaintiffs will be limited, however, to 15 interrogatories per remaining Defendant Supervisor.

Second, Plaintiffs may ask about the materials and information reviewed, requested, and/or made available to the Supervisor(s) in redistricting. *See Village of Arlington Heights*, 429 U.S. at 270 n.20 (the plaintiffs "were allowed, both during the discovery phase and at trial, to question Board members fully about materials and information available to them at the time of decision").

Third, Plaintiffs may ask which maps were considered by the Supervisors and the

---

[7] County Defendants are advised that they may not seek to prevent Defendant Supervisors from being deposed and then later attempt to present their testimony at trial.

reasons certain maps were rejected. *See Callais*, 608 U.S. at 113 (providing example of circumstances giving rise to strong inference of intentional discrimination, which include legislative body's "reason" for rejecting certain maps).

Fourth, Plaintiffs may ask the "grounds", "purposes", and/or "objectives" the selected map was drawn the way it was drawn. *See Callais*, 608 U.S. at 115-16 (describing legislative body's identified "grounds", "purposes", and "objectives" for the selected map and requiring Section 2 plaintiffs to offer an alternative map that achieves all of the identified "objectives"); *see also White*, 2026 WL 1963806, at *3-4 (reopening discovery post-*Callais* as to the state legislature's "objectives" in enacting the districting map).

Fifth, except for the third and fourth topics described above, Plaintiffs may not ask about the Supervisor's "opinions, motives, recommendations or advice" about redistricting, including their discussions and communications with other Supervisors or with the Supervisor's staff about the Supervisor's "opinions, motives, recommendations or advice." *See Petteway*, 2023 WL 3452065, at *7.

Sixth, Plaintiffs may not ask about any legal advice provided to the Board of Supervisors by County Counsel, as the Court previously held this information is protected by the attorney-client privilege. *See* 10/7/2026 Order at 23.

### D. **Plaintiffs' Motion to Compel Further Deposition Responses by Defendant Supervisor Grewal** (ECF Nos. 113, 121)

Plaintiffs seek to compel Defendant Supervisor Grewal's further responses to eight questions asked during his deposition, numbered 1 through 8 in the parties' Joint Statement, each of which the Court addresses individually below. County Defendants assert that the questions need not be answered under the legislative privilege and, for certain questions, attorney-client privilege.[8] *See* Sections III.B.1, III.C.1. Unlike the four

[8] Because County Defendants expressly waived their assertions of work-product protection over responses to Questions 3, 5, and 8, the Court does not reach that objection. *See* Jt. Stmt. re Grewal & Hayes Deps. at 18, 20.

remaining Supervisors who have not been deposed and for whom County Defendants seek a protective order to prevent their depositions, County Defendants voluntarily agreed to Supervisor Grewal's deposition, he has already been deposed, and the analysis to determine whether further responses are warranted differs than the remaining Supervisor Defendants.

1. Grewal Deposition Question 1: Deny MTC

Plaintiffs asked, "Do you know why you supported ad hoc citizen advisory structure for a redistricting commission over any other kind of redistricting commission type?" Jt. Stmt. re Grewal & Hayes Deps., Exh. A ("Grewal Dep."), at 35:24-36:2 (ECF No. 121-1). County Defendants assert this question is covered by the legislative privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14.

The Court agrees with County Defendants. This question is covered by the legislative privilege because it seeks information regarding the Supervisor's "opinions, motives, recommendations or advice about legislative decisions." *Petteway*, 2023 WL 3452065, at *7. The Court denies the motion to compel as to deposition Question 1.

2. Grewal Deposition Question 2: Grant MTC

Plaintiffs asked, "Did you receive updates on the Commission's progress in its map drawing meetings during closed session meetings?" Grewal Dep. at 45:22-24. County Defendants assert this question is covered by the legislative privilege and attorney-client privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14, 17-18.

Whether Supervisor Grewal received updates on the Commission's progress is not covered by the legislative privilege because it does not "contain[] or involve[] opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Petteway*, 2023 WL 3452065, at *7. The Court grants Plaintiffs' motion to compel Supervisor Grewal's further response to deposition Question 2. To provide clear guidance and minimize potential further discovery disputes, the Court addresses whether follow-up questions would be permitted at any re-opened deposition. Certain limited follow-up questions would also be

permissible and not privileged (e.g., when Supervisor Grewal received updates, from whom Supervisor Grewal received updates, whether other Supervisors also received such updates, etc.), but other follow-up questions would be covered by the legislative privilege and impermissible topics (e.g., how did the updates affect the Supervisor's opinion, what advice did the Supervisor receive about the update, what discussion did the Supervisor have about the update, etc.).

3. Grewal Deposition Question 3: Grant MTC

Plaintiffs asked, "Did you ever review a report from any of the county's consultants that showed that a map with two Hispanic CVAP majority districts of 50.1% would be expected to underperform due to historically low voter turnout?" Grewal Dep. at 61:9-13. County Defendants assert this question is covered by the legislative privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14.

This question relates to what the Supervisor reviewed during the County's redistricting process, and is not covered by the legislative privilege. The underlying data, facts, and what a Supervisor reviewed in the redistricting process is distinct from the Supervisor's "opinions, motives, recommendations or advice about legislative decisions." *Petteway*, 2023 WL 3452065, at *7. The Court grants Plaintiffs' motion to compel Supervisor Grewal's further response to deposition Question 3. To provide clear guidance and minimize potential further discovery disputes, the Court addresses whether follow-up questions would be permitted at any re-opened deposition. Certain limited follow-up questions would also be permissible and not privileged (e.g., showing the Supervisor the report at issue to ascertain whether the Supervisor reviewed a specific report, when the report was reviewed, from whom the report was received, etc.), but other follow-up questions would be covered by the legislative privilege (e.g., how did the report affect the Supervisor's opinion, what advice did the Supervisor receive about the report, what discussion did the Supervisor have about the report, etc.).

4. Grewal Deposition Question 4: Grant MTC

Plaintiffs asked, "Did you understand at the time that the board of supervisors was

only giving final consideration to draft maps that had a single district in which or a single district that exceeds the then current CVAP of 53.93%?" Grewal Dep. at 62:23-63:2. County Defendants assert this question is covered by the legislative privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14.

Similar to deposition Question 3 and for the same reasons, this question relates to what the Supervisor considered during the County's redistricting process, and is not covered by the legislative privilege. *See Petteway*, 2023 WL 3452065, at *7. The Court grants Plaintiffs' motion to compel Supervisor Grewal's further response to deposition Question 4.

5. Grewal Deposition Question 5: Grant MTC

Plaintiffs asked, "Did you review any report about why 53.93% Hispanic CVAP in one district would not be enough to elect Latinos candidate of choice?" Grewal Dep. at 66:13-15. County Defendants assert this question is covered by the legislative privilege and attorney-client privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14, 17-18.

Similar to deposition Questions 3 and 4, and for the same reasons, this question relates to what the Supervisor reviewed during the County's redistricting process, and is not covered by the legislative privilege. *See Petteway*, 2023 WL 3452065, at *7. In addition, underlying data and facts related to the legislative activity of redistricting are not attorney-client privileged. *See id.* at *4-6. The Court grants Plaintiffs' motion to compel Supervisor Grewal's further response to deposition Question 5. To provide clear guidance and minimize potential further discovery disputes, the Court addresses whether follow-up questions would be permitted at any re-opened deposition. Certain limited follow-up questions would also be permissible and not privileged (e.g., showing the Supervisor the report at issue to ascertain whether the Supervisor reviewed a specific report, when the report was reviewed, from whom the report was received, etc.), but other follow-up questions would be covered by the legislative privilege (e.g., how did the report affect the Supervisor's opinion, what advice did the Supervisor receive about the report, what discussion did the Supervisor have about the report, etc.).

6. Grewal Deposition Question 6: Grant MTC

Plaintiffs asked, "Did the Board of Supervisors ask or ask consultants for any kind of population projection growth analysis?" Grewal Dep. at 78:15-17. County Defendants assert this question is covered by the legislative privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14.

This question relates to what the Supervisor requested to review during the County's redistricting process, and is not covered by the legislative privilege. The underlying data, facts, and what a Supervisor reviewed in the redistricting process is distinct from the Supervisor's "opinions, motives, recommendations or advice about legislative decisions." *Petteway*, 2023 WL 3452065, at *7. The Court grants Plaintiffs' motion to compel Supervisor Grewal's further response to deposition Question 6. To provide clear guidance and minimize potential further discovery disputes, the Court addresses whether follow-up questions would be permitted at any re-opened deposition. Certain limited follow-up questions would also be permissible and not privileged (e.g., when the Supervisor(s) asked for such analysis, whether the Supervisor(s) received or reviewed any population projection growth analysis, from whom the analysis was received, showing the Supervisor the analysis at issue to ascertain whether the Supervisor reviewed or received it, etc.), but other follow-up questions would be covered by the legislative privilege (e.g., how did the analysis affect the Supervisor's opinion, what advice did the Supervisor(s) receive about the analysis, what discussion did the Supervisor have about the analysis, etc.).

7. Grewal Deposition Question 7: Deny MTC

Plaintiffs asked, "After reviewing documents that were either shown or provided to you by consultants in 2021, did you agree with the assessment that a map containing two districts where Hispanics were a majority of the citizen voting age population would not perform for Latino candidates of choice?" Grewal Dep. at 83:8-14. County Defendants assert this question is covered by the legislative privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14.

The Court agrees with County Defendants. This question is covered by the legislative privilege because it seeks information regarding the Supervisor's "opinions, motives, recommendations or advice about legislative decisions." *Petteway*, 2023 WL 3452065, at *7. The Court denies the motion to compel as to deposition Question 7.

8. Grewal Deposition Question 8: Deny MTC

Plaintiffs asked, "And is that something you arrived at on your own, based on your own analysis or -- or based on the advice you got from the consultants in this case?" Grewal Dep. at 86:13-16. County Defendants assert this question is covered by the legislative privilege and attorney-client privilege. Jt. Stmt. re Grewal & Hayes Deps. at 10-14, 17-18.

This question is covered by the legislative privilege because it seeks information regarding the Supervisor's "opinions, motives, recommendations or advice about legislative decisions." *Petteway*, 2023 WL 3452065, at *7. The Court denies the motion to compel as to deposition Question 8.

9. Reopened Deposition

To minimize the burden on Supervisor Grewal and to ensure the Court's limits are followed, Supervisor Grewal's reopened deposition will be limited to one hour. In addition, Supervisor Grewal is permitted to appear by video if that is less burdensome for him.

**E. Plaintiffs' Motion to Compel Further Deposition Responses by Defendant Jody Hayes** (ECF Nos. 114, 121)

Plaintiffs seek to compel Defendant Hayes's further responses to two questions asked during his deposition, numbered 9 and 10 in the parties' Joint Statement, each of which the Court addresses individually below. (ECF No. 121.) County Defendants assert that the questions are protected by the attorney-client privilege.[9] Notwithstanding its

[9] Because County Defendants expressly waived their assertions of work-product protection over responses to Questions 9 and 10, the Court does not reach that objection. *See* Jt. Stmt. re Grewal & Hayes Deps. at 18, 20.

assertion of privilege, County Defendants have provided supplemental written responses to the deposition questions that Plaintiffs seek to compel further responses. *See* Jt. Stmt. re Grewal & Hayes Deps. at 17.

The Court applies the same legal standard for attorney-client privilege as set forth above. *See* Section III.B.1.

1. <u>Hayes Deposition Question 9: Grant MTC</u>

Plaintiffs asked, “And what data did you review reflecting that two Hispanic CVAP majority of districts of 50.1 percent would underperform?” Jt. Stmt. re Grewal & Hayes Deps., Exh. B (“Hayes Dep.”), at 93:7-10 (ECF No. 121-2). County Defendants assert this question is covered by attorney-client privilege to the extent County Defendants’ supplemental written response is insufficient. Jt. Stmt. re Grewal & Hayes Deps. at 17.

This question relates to underlying data related to the County’s redistricting. Underlying data and facts related to the legislative activity of redistricting are not attorney-client privileged. *See Petteway*, 2023 WL 3452065, at *4-6. The Court grants Plaintiffs’ motion to compel Mr. Hayes’s further response to deposition Question 9. To minimize the potential burden on the County in re-opening a deposition for a single question, if Plaintiffs elect to proceed with re-opening Mr. Hayes’s deposition, the deposition must be taken by video with Mr. Hayes’s remote appearance permitted unless County Defendants elect to have the deposition taken in-person. Plaintiffs may elect to permit Mr. Hayes to provide his further response in writing.

2. <u>Hayes Deposition Question 10: Deny MTC</u>

Plaintiffs asked, “Do you -- what was the legal analysis that led to the recommendation to the Board of Supervisors that there be a map with a single district that exceeds the current Hispanic CVAP of 53.93 percent?” Hayes Dep. at 100:12-16. County Defendants assert this question is covered by the attorney-client privilege to the extent County Defendants’ supplemental written response is insufficient. Jt. Stmt. re Grewal & Hayes Deps. at 17.

County Defendants have already provided a supplemental written response to

Question 10. The Court otherwise denies Plaintiffs' motion to compel as to this question because a response may include legal advice that is subject to the attorney-client privilege. The Court recognizes that there is some legal analysis that may not be privileged (e.g., summary of VRA requirements may include legal analysis but not be privileged), but responding to this question may also include privileged information. The Court denies Plaintiffs' motion to compel Mr. Hayes's further response to deposition Question 10 beyond the supplemental response already provided by County Defendants.

### F. Plaintiffs' Motion to Compel Further Deposition Responses by Aron Harris (ECF Nos. 105, 109)

Plaintiffs seek to compel Mr. Harris's further responses to the following three questions asked during his deposition:

> QUESTION 1: "And how is it that you worked with each of the members -- elected members of the Board of Supervisors on redistricting in 2021?"
>
> QUESTION 2: "And in that meeting before they chose the final map, what did -- what did they discuss with you about the map?"
>
> QUESTION 3: "[W]hen you and Damian Martinez met with each of the individual Board of Supervisors members, what did you discuss?"

Jt. Stmt. re Harris Dep. at 5 (ECF No. 109); *id.*, Exh. A, Deposition of Aron Harris ("Harris Dep.") at 38:8-10, 39:24-40:1, 52:2-5 (ECF No. 109). County Defendants object to these questions on grounds of legislative privilege.

As discussed in the Court's October 7, 2026 discovery order, because the Ninth Circuit has not determined whether the legislative privilege extends to communications between legislators and third parties, this Court adopts the reasoning of the Fifth Circuit in determining that the legislative privilege applies to communications between legislators and third parties who are "brought into the legislative process." 10/7/2026 Order at 17 (quoting *Abbott*, 93 F.4th at 323); *see also Vota v. Noble*, 2024 WL 4371943, at *3 (D. Ariz. Oct. 2, 2024); *but see, e.g.*, *League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018). The Court also refers to

the legal standards for the legislative privilege as explained above. *See supra* III.B.1.

1. <u>Harris Deposition Question 1: Grant MTC</u>

Plaintiffs argue that Question 1 relates to "the regular procedure by which supervisors engaged in the 2021 redistricting process." Jt. Stmt. re Harris Dep. at 6. County Defendants point out that Mr. Harris already testified as to the frequency and timing of meetings and who attended those meetings. *Id.* at 9-10; *see also* Harris Dep. at 37:25-39:23; 51:12-52:1.

The Court agrees with Plaintiffs that this question is not protected by the legislative privilege. The process— "how" Mr. Harris worked with each Supervisor —is not privileged as it does not go to the "opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Petteway*, 2023 WL 3452065, at *7. While it appears that Mr. Harris may have provided some testimony during his deposition that is related to timing and attendance at meetings, he did not fully respond to this question. The Court grants Plaintiffs' motion to compel Mr. Harris's further response to deposition Question 1. To minimize the potential burden on the County in re-opening a deposition for a single question, if Plaintiffs elect to proceed with re-opening Mr. Harris's deposition, the deposition must be taken by video with Mr. Harris's remote appearance permitted unless County Defendants elect to have the deposition taken in-person. Plaintiffs may elect to permit Mr. Harris to provide his further response in writing.

2. <u>Harris Deposition Questions 2 & 3: Deny MTC</u>

Questions 2 and 3 to Mr. Harris seek information protected by the legislative privilege because Plaintiffs seek information about the content of Mr. Harris's discussions with the Board of Supervisors. *See Abbott*, 93 F.4th at 322; *Petteway*, 2023 WL 3452065, at *7. Accordingly, Plaintiffs' motion to compel Mr. Harris's further responses as to Questions 2 and 3 is denied.

/ / /

/ / /

### G. Schedule

Under the current case schedule, fact discovery is set to be completed by December 2, 2026, with expert discovery deadlines and dispositive motion deadlines following. (ECF No. 104.) Because the Court is granting in part and denying in part the discovery sought by Plaintiffs, including scheduling additional depositions and reopening certain depositions, the current case schedule needs to be modified. Within fourteen days of this order, the parties are ordered to meet and confer to discuss scheduling to complete fact discovery and the overall case schedule, and to submit a joint proposed modified case schedule for the district court's consideration.

## IV. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for leave to take ten additional depositions (ECF No. 112, 120) is granted in part and denied part.
2. County Defendants' motion for a protective order regarding the deposition of Thomas Boze (ECF Nos. 111, 120) is denied.
3. County Defendants' motion for protective orders regarding the depositions of Defendants Supervisor Matthew Condit, Supervisor Chiesa, Supervisor Withrow, and Supervisor Channce Condit (ECF Nos. 110, 120) is granted in part and denied part. The parties are ordered to meet and confer in-person, by video, or by phone regarding the interrogatories directed to the remaining Defendant Supervisors, including discussing the proposed language of the interrogatories to avoid any additional motion practice on this discovery issue.
4. Plaintiffs' motion to compel further deposition responses from Defendant Supervisor Grewal (ECF Nos. 113, 121) is granted in part and denied part.
5. Plaintiffs' motion to compel further deposition responses from Defendant Hayes (ECF Nos. 114, 121) is granted in part and denied part.
6. Plaintiffs' motion to compel further deposition responses from Aron Harris (ECF Nos. 105, 109) is granted in part and denied part.

7. Within fourteen days of this order, the parties are ordered to meet and confer as to the case schedule and jointly file a proposed modified case schedule.

Dated: November 9, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, lope.1175.25/csk